WEAVER *v.* STATE OF INDIANA.

[No. 30,504. Filed April 13, 1966.]

*Donald D. Martin,* and *James P. Gleason,* of Michigan City, for appellant.

*Edwin K. Steers,* Attorney General, and *David S. Wedding,* Deputy Attorney General, for appellee.

RAKESTRAW, J.—This is an appeal from a verdict of guilty of a charge of first degree murder returned in the LaPorte Superior Court on June 7, 1963. Because of the constitutional questions raised in this case, it would seem helpful to recount briefly some of the evidence regarding the crime and the apprehension and custody of the defendant.

While two boys were hunting in a pasture-like field in St. Joseph County, they discovered the body of a 15 year old girl who turned out to be the decedent, Mary Koontz. She was lying mostly nude with her head suspended from a small pine tree by means of a scarf tied to the tree. Among the items found in the vicinity of the body was a cigarette which later proved to be the same brand as smoked by the defendant, and pieces of a note which evidence later showed to be in the defendant's handwriting. There was various marks on the body, including pressure marks on the throat. According to the testimony of the county coroner, a physician, the cause of her death was strangulation.

On the same day the body was discovered, police officers interviewed the defendant and questioned him about his ac-

tivities on the previous day. On that date, they asked for some of his clothing, which they took to the police laboratory. The defendant was not taken into custody at that time. On two or three other occasions prior to the defendant's arrest, he was interviewed by police officers briefly, but was at no time taken into custody or held.

About 17 days after the discovery of the body, the defendant upon request of police officers voluntarily went to the Police Department office in Mishawaka, Indiana. Several officers were present at the time including a juvenile officer. (The defendant was 17 years of age.) The defendant answered some routine questions, and was asked to fill out a form for a handwriting sample, which he voluntarily did. He admitted that one story he had given the police was a lie and started to tell another story of seeing the decedent, Mary Koontz, in a pink Studebaker. He then suddenly said "I might as well tell you the truth. I killed Mary Koontz."

The Prosecuting Attorney's office was called, the defendant was charged in Justice of the Peace court and taken before the Justice, where he was advised of his constitutional rights. After he was bound over in the Justice of the Peace court, he was taken to the Prosecutor's office and again informed of his rights. At that time he gave the Prosecutor and the police a long and detailed statement of the crime, which was typed by a stenographer and signed by the defendant. This written confession contained all the details subsequently brought out at the trial. It was admitted in evidence and the defendant does not claim any irregularity in connection with it. It is unnecessary to set out the detailed story of the murder as given in the confession.

There are, however, two items of evidence to which the defendent objected and upon which he now relies to set aside the conviction.

After the venue of the cause had been changed from St. Joseph County to LaPorte County, the defendant, through his mother, asked two state policemen to visit with him in the LaPorte County Jail. There, he related to the officers that a

certain George Segar stopped him at about 8:00 p. m. on the night of the murder, showed him the body, and said that unless he took the rap he or his family would be hurt. When the officers told him that they believed he was lying, he broke out laughing.

The second incident involved a Mr. Fidati, a newspaper reporter. Mr. Fidati, by invitation, rode with the sheriff of St. Joseph County when he delivered the defendant to the LaPorte County jail. The defendant asked if Mr. Fidati was a newspaper reporter, and the sheriff answered that he was not. In the conversation during the trip, the defendant related to the sheriff and Mr. Fidati the details of the killing, as previously given in his confession. Nothing was printed in the newspaper as a result of this conversation, but Mr. Fidati was permitted to testify over the objection as to this conversation.

Part of the defendant's objection to the latter conversation was on the ground that a deception was practiced on him. The record seems uncontradicted that the defendant was told that Mr. Fidati was not a newspaper reporter. He asked no further questions concerning Mr. Fidati. The defendant did know that what he was saying could be heard by the sheriff. Mr. Fidati was not represented as a confidential friend or someone in whom the defendant could place any particular trust. While we cannot approve of the conduct of the sheriff in misstating Mr. Fidati's occupation, we are of the opinion that any misrepresentation that was made was not material and would not be sufficient ground for excluding the testimony.

The other objection was made by the defendant to both of the items of testimony. It is that both items of conversation were obtained from the defendant when he was represented by counsel of record, and out of the presence of his counsel. The defendant cites the following cases of the United States Supreme Court dealing with the right to counsel. *Escobedo* v. *State of Illinois* (1964), 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.

2d 977; *Massiah* v. *United States* (1964), 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246; *Spano* v. *New York* (1959), 360 U. S. 315, 79 S. Ct. 1202, 3 L. Ed. 2d 1265.

A careful examination of those cases together with commentaries concerning them indicates that the United States Supreme Court has been gradually broadening the implications of the right to counsel in a criminal case. There is disagreement as to the scope of the right to counsel and how far peace officers may go in questioning a defendant (without counsel or out of the presence of counsel).

However, several of the factors in the above cited cases are not present in the case at bar. There is no evidence in the present case that the defendant was subjected to any secret or prolonged interrogation of any type. There is no evidence that the defendant was denied access to counsel at any time, or that he asked for counsel at any time when counsel was not provided. Finally, there is no evidence that anyone at any time used hidden means to get incriminating evidence from the defendant without his knowledge. On the contrary, it appears from the record that the defendant was at no time held or questioned for an undue length of time, that pauper counsel were furnished promptly, and that the defendant at all times talked freely and openly—almost impulsively.

In addition, there were other factors involved here tending to justify the admission of the testimony objected to. The defendant's primary defense was insanity. The conversations and actions of the defendant were admissible as bearing upon his soundness or unsoundness of mind.

As to the conversation in the LaPorte County jail with the state troopers; the defendant had asked for them. It had also been brought out in questioning by defendant's counsel that the officers had made investigations concerning a certain Mr. Segar. The state should certainly be permitted to show why an investigation of Mr. Segar had been made, and the appellant's statement in the LaPorte County jail is the explanation for that investigation.

A careful examination of the record also indicates that neither of the above two conversations contained anything incriminating which had not previously been admitted by the defendant in his written confession and in his previous statements. While this fact would not justify the admission of inadmissible evidence, it is a factor in determining if the defendant was prejudiced.

Under the circumstances of this case, it was not error to admit the above two conversations in evidence. To hold otherwise would require that counsel be incarcerated with the defendant from the time of the initial interrogation up through the trial in order to protect his constitutional rights. We do not believe that such steps are required.

The defendant next argues that it was error for the court to appoint two physicians to examine him and to permit one of the physicians to testify in court concerning such examination. The state filed a petition to require the defendant to submit to examinations by physicians selected by the state on the issue of his mental condition or sanity. The defendant filed written objections to the petition for examination. These objections were as follows:

1) That the physicians so appointed would of necessity obtain information from the defendant's lips in violation of § 14, Art. 1, of the Constitution of Indiana and of the Fifth Amend. of the Constitution of the United States.

2) That it would be an abuse of the court's discretion to appoint physicians selected by the state.

3) That the court either has or will appoint physicians pursuant to Burns' Ind. Stat. Anno. § 9-1702 (1956 Repl.), and that no other appointments are authorized.

The court granted the petition and appointed two doctors to examine the appellant as to his sanity at the time of examination and at the time of the commission of the crime "as the court's own selection." One of these physicians testified at the trial as a rebuttal witness for the state over appellant's objection.

It has long been settled that it is not a violation of an accused's constitutional rights to compel him to be examined by psychiatrists to determine his sanity when he has ■ entered a plea of insanity. *Noelke v. State* (1938), 214 Ind. 427, 15 N. E. 2d 950.

No Indiana authority has been cited as to whether on a plea of insanity the state is permitted to have an accused examined by psychiatrists of its choosing. The statute ■ does seem to imply that this is a possibility ("including testimony of medical experts employed by the state and by the defense, if any.") Burns' Ind. Stat. Anno. § 9-1702, *supra.*)

In this case, the court specifically appointed the two physicians involved "as the court's own selections." The statute does authorize the court to appoint "two or three" competent physicians.

In addition, there is no showing that such action of the court was harmful or prejudicial to the defendant. The testimony of the physician appointed did not involve the details of the offense charged. It concerned only the defendant's comprehension and personality as they related to the legal test of sanity. The testimony of this doctor was essentially the same as the testimony of the other two physicians appointed by the court, and in some ways was favorable to the defendant. Under all the circumstances, we hold it was not reversible error for the trial court to appoint the physician at the request of the state in this instance.

Finally, the defendant claims that it was error for the ■ court to give Court's Instruction No. 20. Court's Instruction No. 20 reads as follows:

"I instruct you that a statute of the State of Indiana in full force and effect at the time of the occurrence in question provided as follows: 'The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, except when made under influence of fear produced by threats or by intimidation or undue influence; *but a confession made under induce-*

*ment is not sufficient to warrant a conviction without corroborating evidence.'* [Our emphasis.]

"The State of Indiana has introduced in this cause two documents in writing purported to be the written confessions of the defendant, Charles William Weaver. If, at the time the purported confessions were made by the defendant, the defendant was under the influence of fear produced by threats or intimidation or if the defendant was unduly influenced by any cause or if the purported confession was obtained by means of fraud practiced upon the defendant or by means of a combination of two or more of the foregoing and such fear, undue influence, intimidation or fraud, if any was such as to cause defendant to be other than a free agent, then you, the jury, should not consider said purported confession even though you might believe that the matters set out therein are true. On the other hand, *these purported confessions are to be considered by you, along with all the other evidence introduced in this cause,* if you first find beyond a reasonable doubt that said purported confessions were given as the free and voluntary act of the defendant, Charles William Weaver." [Our emphasis.]

The defendant made the following objection to that instruction:

"The defendant, after the close of all the evidence and before the commencement of the argument, objects to giving of the Court's Instruction No. 20, for each and all of the following reasons:

1. There is no evidence that 'the purported confessions were given as the free and voluntary act of the defendant, Charles William Weaver.'

2. Under the undisputed evidence the confessions were 'induced' by the questioning of law enforcement officers.

3. The instruction is misleading in that it leads the jury to believe that if not obtained by fraud, threats, fear, undue influence, intimidation, or other causes, it may be considered without corroboration."

It is obvious from an examination of the above instruction, particularly the portion underlined, that the jury was instructed in full that an induced confession must be corroborated by other testimony. There is also considerable evi-

dence that the confession was quite voluntarily given, without any "inducement;" and there was corroborating evidence.

In addition, the court gave at the request of the defendant his Instruction No. 15 which reads as follows:

"A statute of the State of Indiana provides:

'The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, except when made under the influence of fear produced by threats or by intimidation or by undue influences; but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence.' [§ 9-1607, Burns' Ind. Stat. Anno. (1956 Repl.)].

By the term 'corroborating evidence' is meant supplemental or additional evidence tending to strengthen or confirm the confession.

So if you find that the only evidence that the defendant, Charles William Weaver, committed any crime, whether it be manslaughter, second degree murder, or first degree murder, is a confession made under inducement without any supplemental or additional evidence tending to strengthen or confirm confession, then you should return a verdict finding the defendant, Charles William Weaver, not guilty."

Considering both instructions together with the evidence we feel the objection is not well taken, but that the jury was clearly and fully instructed as to the confession.

In view of the age of the appellant at the time of the trial and seriousness of the charge, we have made a sincere effort to consider all questions presented. It is clear from the record that the case was well tried and the court and counsel conducted the trial in a careful and thoroughly professional manner.

The attorney for the defendant who tried the case and who prepared the briefs, James P. Gleason, of Michigan City, has since died. Judging from the record in this cause, his death is a great loss to the legal profession. In the trial, all reasonable objections were made clearly and concisely. On appeal, the rules of briefing were scrupulously complied with. Issues were set forth and argued in a clear cut fashion. The

fact that some of the usual issues were not raised indicates to us that he exercised good professional judgment.

Since we find no error, the judgment of the trial court is affirmed.

Myers, C. J., Arterburn and Jackson JJ., concur. Achor, J., not participating.

NOTE.—Reported in 215 N. E. 2d 533.