RICHARD BIMBOW v. STATE OF INDIANA.

[No. 2-873A187. Filed August 29, 1974.]

*George A. Purvis,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Miller,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant Richard Bimbow (Bimbow) appeals from a trial court conviction of Assault and Battery with Intent to Kill, claiming insufficiency of evidence as to specific intent, failure of proof as to sanity, and error in denying his motion to employ an additional psychiatrist of his own choosing at State expense.

We affirm.

## FACTS

The facts in evidence most favorable to the trial court's verdict are:

On October 27, 1971, at approximately 12:45 P.M., Bimbow walked into the Harbor Light Mission Center and demanded

money from the director of the Center's Alcoholic Rehabilitation Program, Mr. Donald Diercks (Diercks). Bimbow had been a participant in the program.

Upon being informed by Diercks that he did not "have any money coming", Bimbow's response was, "I'm going to kill you." Pulling a knife from his pocket, he assaulted Diercks cutting him from the left ear to the throat and stabbing him in the right arm.

After a struggle Bimbow was finally subdued by five men who were participants in the Center's program, while two other participants ran to the street and hailed a passing police car. Bimbow, still struggling, was handcuffed and placed under arrest.

At the trial on December 14, 1972, two policemen testified they observed a paring knife lying a few feet from Bimbow, the blade covered with blood, and that Bimbow was agitated and smelled of alcohol.

Diercks also identified the knife as the weapon used in the assault and Bimbow as his assailant.

Evidence presented by Bimbow indicated that he had been a patient in a mental institution for sixteen years and had been released only a few months prior to this episode. He admitted being an alcoholic and had consumed "a couple of drinks" before going to the Center on October 27, 1971. He did recall going to the Center because he needed money to report for a job and that he got angry and hit Diercks, but did not remember having a knife. He also stated his memory of the accident was vague due to a beating he allegedly received from the five men at the Center who subdued him after his assault on Diercks.

Bimbow entered a plea of insanity and pursuant to IC 1971, 35-5-2-2, Ind. Ann. Stat. § 9-1702 (Burns Supp. 1973), the trial court appointed two psychiatrists to examine Bimbow to ascertain his sanity at the time of the commission of the crime as well as his competency to stand trial.

At the competency hearing prior to trial both psychiatrists testified that Bimbow had sufficient comprehension to understand the charges against him, the proceedings of the court, and the ability to assist his counsel in preparation of a defense. The trial court found Bimbow to be sufficiently competent to stand trial.

Also prior to trial, Bimbow filed a Motion to Appoint Additional Psychiatrists, which was subsequently overruled by the Court.

Bimbow was found guilty by the trial court of Assault and Battery with Intent to Kill and received a sentence of not less than two nor more than fourteen years.

Bimbow's subsequent Motion to Correct Errors was granted as to the issue of his sanity at the time of the alleged offense (previously the two psychiatrists had only testified as to his competency to stand trial). He again filed a Motion for Permission to Employ Medical Experts which was overruled.

At the sanity hearing of March 28, 1973, the same two court appointed psychiatrists appeared as witnesses and testified as to the sanity of Bimbow at the time of the assault on Diercks. The court found Bimbow sane at the time of the commission of the crime and guilty as charged and reinstated the sentence entered at the first trial.

## ISSUES

ISSUE ONE.

Was the evidence insufficient to support a conviction of Assault and Battery with Intent to Kill because Bimbow was incapable of forming the specific intent to kill?

ISSUE TWO.

Is the evidence sufficient to support the trial court's determination that Bimbow was sane at the time the offense was committed and its determination that Bimbow had sufficient comprehension to stand trial?

ISSUE THREE.

Did the trial court err in overruling Bimbow's motions for the appointment and employment of additional psychiatrists and medical experts?

AS TO ISSUE ONE, Bimbow contends that the State failed to prove that he entertained a specific intent to kill due to his history of mental illness, alcoholism, his admission to drinking at the time of the offense, and the superficial injuries inflicted upon Diercks.

The State argues that the degree of intoxication at the time of the crime is a question of fact for the trial court to determine and that the severity of the inflicted wounds has no bearing upon the specific intent of the assailant to inflict those wounds.

AS TO ISSUE TWO, Bimbow contends that the State presented insufficient evidence at the two sanity hearings to prove beyond a reasonable doubt that he was sane.

The State argues that the issue of legal insanity is a question of fact to be determined by the trial court, and based upon the evidence presented at the two mental competency hearings, the court properly found Bimbow to be sane at the time of the offense.

AS TO ISSUE THREE, Bimbow contends that the trial court abused its discretion by overruling his motions for appointment of medical experts of his own choosing due to Bimbow's long history of mental illness and discharge from a mental hospital only a few months before the crime.

In response, the State argues that the trial court complied with the statutory requirements of IC 1971, 35-5-2-2, Ind. Ann. Stat. § 9-1702 (Burns Supp. 1973) and contends that Bimbow has failed to show how his rights were prejudiced by the court's rulings.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that there was substantial evidence of probative value that Bimbow was capable of forming the specific intent to kill necessary to support a conviction of Assault and Battery with Intent to Kill.

IC 1971, 35-13-2-1, Ind. Ann. Stat. § 10-401a (Burns Supp. 1973), defines "Assault and Battery with Intent to Kill" as follows:

"ASSAULT OR ASSAULT AND BATTERY WITH INTENT TO KILL.—Whoever with intent to kill another human being perpetrates an assault or assault and battery upon the other human being, shall upon conviction, be imprisoned in the state prison for not less than two (2) nor more than fourteen (14) years."

Bimbow, recognizing his unfortunate affliction, maintains he was intoxicated to such an extent that he was incapable of forming a specific intent to kill Diercks.

Intoxication may be, it is true, a defense to a crime involving specific intent, but only when the accused is so intoxicated as to render him incapable of forming the required specific intent. *Preston* v. *State* (1972), 259 Ind. 353, 287 N.E.2d 347; *Storie* v. *State* (1970), 254 Ind. 301, 258 N.E.2d 849.

In *Davis* v. *State* (1968), 249 Ind. 373, 232 N.E.2d 867, the rule was stated by Chief Justice Arterburn to be:

"Voluntary intoxication is not a defense in a criminal proceeding and does not excuse or palliate crime. *It is only when intoxication has occurred to the extent that a person is mentally incompetent so that he cannot form a specific intent where the crime charged involves a specific intent.* One becoming intoxicated in order to acquire the confidence to commit a crime may not use such a condition as a defense." (emphasis added) 249 Ind. at 376-77, 232 N.E.2d at 869.

*See also,*

*Parsons* v. *State* (1973), 159 Ind. App. 160, 304 N.E.2d 802; *Emler* v. *State* (1972), 259 Ind. 241, 286 N.E.2d 408;

*Daniels* v. *State* (1971), 257 Ind. 376, 274 N.E.2d 702; *Buckley* v. *State* (1970), 254 Ind. 621, 261 N.E.2d 854; *New* v. *State* (1970), 254 Ind. 307, 259 N.E.2d 696; *Day* v. *State* (1968), 251 Ind. 399, 241 N.E.2d 357.

So the degree of intoxication becomes important and the degree of intoxication is a question of fact to be decided by the trier of fact. *Mattingly* v. *State* (1957), 236 Ind. 632, 142 N.E.2d 607 speaks directly to this point:

"There is no doubt the evidence shows that appellant and William Ausley were, to a certain degree, intoxicated. *The determination of whether or not that degree was such as to prevent them from forming a specific intent, was a question of fact for the court or jury, trying such a case.*" (emphasis supplied) 236 Ind. at 636-37, 142 N.E.2d at 609.

*See also,*

*Cotton* v. *State* (1965), 247 Ind. 56, 211 N.E.2d 158; *Eastin* v. *State* (1954), 233 Ind. 101, 117 N.E.2d 124.

The only evidence of Bimbow's intoxication was his testimony in which he stated that he had "a couple of drinks" before going to the Center and had alcohol on his breath.

It can hardly be said that these two statements evinced such a state of intoxication as would render Bimbow incapable of specifically intending to kill Diercks.

Interestingly, he did recall that he went to the Center to get money to report for a job and remembered he got angry and hit Diercks.

Bimbow's history of mental illness and sixteen year incarceration in a mental institution were additional factors to be weighed by the trial court in determining the existence of specific intent:

"Appellant's argument is without merit. Where, as here, intent to kill is a material issue of the crime of which the Appellant was charged, evidence of the length of the victim's hospital confinement may be admitted in evidence for the consideration of the jury in determining Appellant's intent." *Arnett* v. *State* (1969), 251 Ind. 685, 689, 244 N.E.2d 912, 914.

*See also,*
*Marx* v. *State* (1957), 236 Ind. 455, 141 N.E.2d 126.

Bimbow's own testimony, the testimony of the two psychiatrists, and the circumstances surrounding the attack on Diercks constitute sufficient evidence that Bimbow was not so intoxicated or insane as to prevent the formation of specific intent to kill.

Furthermore, Bimbow offered no evidence at either insanity hearing indicating he was insane at the time of his assault on Diercks other than his history of mental illness.

Considering the totality of the evidence the trial court reasonably inferred Bimbow was capable of forming specific intent to kill. *Capps* v. *State* (1972), 258 Ind. 565, 282 N.E. 2d 833; *Asher* v. *State* (1969), 253 Ind. 25, 244 N.E.2d 89.

ISSUE TWO.

CONCLUSION—It is our opinion that there was sufficient evidence presented at the two sanity hearings to sustain the trial court's determination that Bimbow was sane at the time he committed the offense, and had sufficient comprehension to stand trial.

Venerable is the rule in this State that the issue of a defendant's sanity is a question of fact to be determined by the trier of fact:

"It is not the province of the court to instruct the jury that insanity is a physical disease. *It is a question of fact, to be determined from the evidence, whether insanity exists, and what its character and extent is;* and not one to be determined as a matter of law by the court." "*Grubb* v. *State* (1889), 117 Ind. 277, 20 N.E. 257." (emphasis supplied) *Plake* v. *State* (1890), 121 Ind. 433, 435, 23 N.E. 273, 274.
*See also,*
   *Twomey* v. *State* (1971), 256 Ind. 128, 267 N.E.2d 176; *Johnson* v. *State* (1970), 255 Ind. 324, 264 N.E.2d 57; *Shipman* v. *State* (1962), 243 Ind. 245, 183 N.E.2d 823.

Justice Hunter recently expanded on the rule in *Hill* v. *State* (1969), 252 Ind. 601, 251 N.E.2d 429:

"We emphasize that, since the question of whether the defendant has a disease or defect is ultimately for the triers of fact, obviously its resolution cannot be controlled by expert opinion. *The jury must determine for itself, from all the testimony, lay and expert, whether the nature and degree of the disability are sufficient to establish a mental disease or defect* as we have now defined those terms. What we have said, however, should in no way be construed to limit the latitude of expert testimony." (Our emphasis) 252 Ind. at 616, 251 N.E.2d at 437.

*See also,*

*Tomlin* v. *State* (1972), 258 Ind. 604, 283 N.E.2d 363; *Valentine* v. *State* (1971), 257 Ind. 197, 273 N.E.2d 543; *Thomas* v. *State* (1971), 256 Ind. 309, 268 N.E.2d 609.

As previously indicated, the record discloses no proffer of evidence by Bimbow to prove he was insane either at the time of the offense, or at the time of trial.

What the record does reveal is testimony from two court appointed psychiatrists, both of whom examined Bimbow on two different occasions while he was incarcerated in the Marion County General Hospital detention ward.

At the mental competency hearing held on June 8, 1972, Drs. Schuster and Hull testified in agreement that Bimbow had sufficient comprehension to understand the nature of the charges against him, the nature of the proceedings, and the ability to assist in the making of his defense to the charges against him.

Cross examination of the doctors by Bimbow's counsel failed to discredit their expert opinions as related above, nor was any other evidence placed into the record upon which the trial court could arrive at a contrary determination.

At the second sanity hearing held on March 28, 1973, the same two doctors testified that in their opinion Bimbow was sane at the time that the offense was committed. Dr. Schuster further stated that Bimbow had neither a mental defect or disease that would cause a lack of appreciation of the lawfulness of his conduct nor an inability to conform his conduct to the requirements of the law.

The uncontroverted testimony presented by the two psychiatrists sufficiently established Bimbow's sanity at the time of trial and at the time of commission of the offense. *Majors* v. *State* (1974), 160 Ind. App. 134, 310 N.E.2d 283; *Lenovich* v. *State* (1958), 238 Ind. 359, 150 N.E.2d 884; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N.E.2d 185; *Brattain* v. *State* (1945), 223 Ind. 489, 61 N.E.2d 462; *Sharp* v. *State* (1903), 161 Ind. 288, 68 N.E.2d 286; *Freese* v. *State* (1902), 159 Ind. 597, 65 N.E. 915; *Hill* v. *State, supra; Plake* v. *State, supra.* Accordingly, we deem the evidence to be sufficient to sustain the findings as to Bimbow's sanity.

ISSUE THREE.

CONCLUSION—It is our opinion that the trial court did not abuse its discretion by overruling Bimbow's motions for employment of additional psychiatrists of his own choosing (at State expense) and was in substantial compliance with the Insanity Statute (IC 1971, 35-5-2-2, Ind. Ann. Stat. § 9-1702 [Burns Supp. 1973]).

After Bimbow entered a plea of insanity the trial court (pursuant to the Insanity Statute) appointed two psychiatrists to conduct an examination of Bimbow to ascertain his sanity:

"9-1702 [2291]. Evidence on trial of defendant's insanity —Expert testimony.—At the trial of such cause, evidence may be introduced to prove the defendant's present sanity or insanity, or his sanity or insanity at the time at which he is alleged to have committed the act charged in the indictment or affidavit. When an insanity defense is pleaded, *the court shall appoint two [2], or three [3], competent disinterested physicians to examine the defendant, and to testify at the trial.* Such testimony shall follow the presentation of the evidence for the prosecution and for the defense, *including testimony of medical experts employed by the state and by the defense, if any.* The medical witnesses appointed by the court may be cross-examined by both the prosecution and the defense, and each side may introduce evidence in rebuttal to the testimony of such medical witnesses. [Acts 1913, ch. 298, § 2, p. 774; 1927, ch. 102, § 1, p. 268.] (emphasis supplied)

Bimbow would interpret this Statute as contemplating the appointment, at State expense, of psychiatrists of his choosing . . . being in addition to those appointed by the court. As authority for this position of the Statute, Bimbow cites *Hashfield* v. *State* (1965), 247 Ind. 95, 210 N.E.2d 429, and *Weaver* v. *State* (1966), 247 Ind. 315, 215 N.E.2d 533, neither of which support any such proposition.

In the *Hashfield* case the *trial* court authorized the employment of three physicians by the defendant, to aid in his defense . . . their expenses to be paid by the State. The propriety of such action was in no way an issue on appeal. In the *Weaver* case the Supreme Court did state that the Insanity Statute "does seem to imply" that the "accused [be] examined by psychiatrists of its [*the State's*] own choosing." 247 Ind. at 321, 215 N.E.2d at 536.

Giving the words of the Insanity Statute their plain and ordinary meaning, there is no inference that the court *must* appoint at the State's expense additional psychiatrists of defendant's choosing.

Furthermore, there is no showing by Bimbow of any prejudice resulting from denial of appointment of additional medical experts for the preparation of his defense. Judge Rakestraw in *Weaver* put it this way:

"In addition, there is no showing that such action of the court was harmful or prejudicial to the defendant." 247 Ind. at 321, 215 N.E.2d at 536.

*See also,*

State v. *Criminal Court of Marion County* (1955), 234 Ind. 632, 130 N.E.2d 128.

Prejudice to the defendant is a condition precedent for an appellate court to disturb a trial court's discretionary denial of appointment of medical experts at State expense to aid an indigent in preparation of his defense:

". . . It has been held that *there is no constitutional right,* or no right in absence of Statute, *to have furnished, at public expense, the services* of investigators, or the services of experts, *including psychiatrists . . .* (footnotes omitted)."

23 C.J.S. § 982(8), p. 291 (Cum. Supp. 1974). (our emphasis)

*See also,*

*United States* v. *Patterson,* 438 F.2d 328 (5th Cir. 1971); *United States ex rel. Huguley,* 325 F.Supp. 489 (N.D. Ga. 1971); *Phillips* v. *State* (1967), Miss., 197 S.2d 241; *State* v. *Reams* (1969), 104 Ariz. 472, 455 P.2d 446; *State* v. *Young* (1969), 203 Kan. 296, 454 P.2d 724; *Carlino* v. *United States,* 390 F.2d 624 (9th Cir. 1968); *United States* v. *Matthews,* 249 F.Supp. 592 (D. Mass. 1966); *Thessen* v. *State* (1969), Alaska, 454 P.2d 341.

The trial court did not abuse its discretion in following the statutory procedure and its judgment should be and is affirmed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 315 N.E.2d 738.