CHARLES E. ANTRUP *v.* STATE OF INDIANA

[No. 3-876A196. Filed March 9, 1978. Rehearing denied April 28, 1978. Transfer denied July 28, 1978.]

*William B. Bryan,* of Angola, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Alembert W. Brayton,* Deputy Attorney General, for appellee.

STATON, P.J.— Antrup appeals from his conviction of theft for which he received a prison sentence of not less than one nor more than ten years. He presents these questions for review:

(1) Did the trial court err in admitting a statement Antrup gave before trial to Trooper Urbahns because:

    a. Antrup did not understand the rights waiver form which he signed before giving the statement, and

    b. his attorney had instructed police not to speak to him or question him?

(2) Did the trial court err in admitting certain evidence which Antrup contends was the product of an unreasonable search?

(3) Did the prosecutor's remarks at summation constitute misconduct?

(4) Did the trial court err in giving Instruction No. 12?

We affirm.

We examine first the State's contention that Antrup's appeal must fail because his motion to correct errors and his memorandum in support of it lack the requisite specificity.

## I.

## Specificity

Antrup's motion to correct errors does not present us with the grounds for his assertions that admission of his pretrial statement and admission of evidence seized from his residence constitute reversible error. His motion directs us to his supporting memorandum for these grounds. Antrup's supporting memorandum, in turn, directs us to the record of the hearing on his pretrial Motion to Discharge and in the Alternative to Suppress, and to the memorandum in support of that motion, for these grounds.[1] This memorandum,

---

1.  Specification of Error No. 1 in Antrup's motion to correct errors is illustrative:

however, was neither attached to nor submitted with his motion to correct errors. Similarly, the motion to correct errors gives us no clue as to how the prosecutor's remarks at summation amounted to misconduct. In short, we are forced to dig from Antrup's brief and from the record the generalities, as well as the specifics, of his appeal.

Ind. Rules of Procedure, Trial Rule 59(B), requires that the motion to correct errors "be specific rather than general," and that it be "accompanied by a statement of the facts and grounds upon which errors are based." In recent years this Court has been compelled to harp on the need for specificity in the motion. *See, e.g., Sacks v. State* (1977), 172 Ind. App. 185, 360 N.E.2d 21; *Bennett v. State* (1973), 159 Ind. App. 59, 304 N.E.2d 827; *Ostirc v. St. Mary's College* (1972), 153 Ind. App. 616, 288 N.E.2d 565.[2]

In *Bennett, supra,* Judge Buchanan offered the rationale behind the specificity directive:

---

"'That evidence was admitted in regards to alleged statement given by the defendant to Trooper John Urbahns. See attached memorandum in support of Motion to Correct Errors.''

Antrup's Specification of Error No. 1 in his memorandum in support of the motion reads as follows:

"On February 6, 1976, the defendant filed his Motion to Discharge and in the Alternative to Suppress Evidence which was directed in part to the alleged statement given to Trooper Urbahns, which is attached to the affidavit in Count II in this cause. On February 6, 1976, there was a hearing on the above motion. At a trial prior to any testimony concerning the alleged statement, the defendant objected to any testimony or evidence based on the alleged statement for the reasons contained in the hearing on the Motion to Suppress as well as the reasons contained in the Memorandum in Support of said motion. The Court erroneously allowed the testimony of Trooper John Urbahns in regards to said statement into evidence."

2.   *See also Johnson v. State* (1975), 167 Ind. App. 292, 338 N.E.2d 680, wherein this Court asserted:

"The requirement of specificity contained in TR. 59(B) and echoed by TR. 59(G) should be notorious by now. Not only must the alleged error be specifically set out, but also the facts and grounds in support of the claimed error must be discussed with enough particularity that the trial court may be made aware of the exact legal issue involved." *Id.* at 682.

The appellate court as well as the trial court must be able to discern from the motion and memorandum the exact legal issue involved. Although the facts and grounds of the claimed error need not be set forth in the motion with the precision and detail required for a well-written appellate brief, mere conclusory allegations are not sufficient.

"Without being informed by a specific statement of the facts and grounds on which the claimed error is based, the trial judge cannot rectify his errors, if any. Were it otherwise, an appellant could propel himself into this [Court] or the Supreme Court by general statements of claimed errors, detailed at leisure after his motion to correct errors is overruled. Such a gigantic bootstrap by an appellant is precisely what the rules of appellate procedure are designed to avoid. . . ." *Id.* at 829.

The sanction imposed for failure to comply with the requirements of TR. 59 is waiver of the claimed error. TR. 59(G). *See Anderson v. Indiana State Emp. Appeals Com'n* (1977), 172 Ind. App. 529, 360 N.E.2d 1040; *Matthew v. State* (1972), 154 Ind. App. 182, 289 N.E.2d 336. But in recent cases in which the technical requirements of appeal were disregarded the rule has arisen that alleged error will be deemed waived only when the defendant's noncompliance with the requirement is substantial enough to impede our consideration of the issues raised. *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836 (arrangement and content of briefs); *Ind. St. Bd. of Tax Com'rs v. Lyon & Greenleaf Co.* (1977), 172 Ind. App. 272, 359 N.E.2d 931 (content of briefs). *See also Edwards v. State* (1976), 265 Ind. 239, 352 N.E.2d 730. Although Antrup's motion and supporting memorandum lack specificity, we are able to glean from his brief and from the record the gist of his arguments. We eschew deciding cases on technicalities; we prefer deciding cases on their merits. *Ind. St. Bd. of Tax Com'rs, supra.*

Furthermore, while the motion to correct errors serves as the complaint on appeal, its primary purpose is to afford the trial court the opportunity to rectify errors it has committed. *Bennett, supra.* In Antrup's case the trial court also presided at the hearing on his suppression motion. It was therefore familiar with the facts and grounds of the claimed error, and Antrup's allegations in his motion to correct errors were no doubt specific enough for the trial court to make an informed ruling thereon.

We proceed, then, to examine the merits of Antrup's appeal.

## II.

### Admissiblity of Statement

Police arrested Antrup and charged him with the burglary of

Don's Shell Station in Fremont, Indiana. After he was in custody and had retained counsel, Antrup asked to see Trooper Urbahns, who was one of the investigating officers in his case. When Urbahns visited Antrup in jail on December 19, 1976, he asked Antrup if Antrup wanted to see him. Antrup replied that he did. Urbahns gave Antrup a standard rights waiver form,[3] which Antrup signed after indicating that he was familiar with the form. Urbahns testified in a suppression hearing and at trial that after Antrup had given him information on other crimes committed in the Fremont area, the following conversation took place between the two:

URBAHNS: "You've told me about all these burglaries that involve other people. How many could you clear up yourself?"

ANTRUP: "All of these I've told you about."

URBAHNS: "No, I mean those that you are responsible for and those that that you are involved [in]."

ANTRUP: "I would clear up the rest of mine—the two in Fremont."

URBAHNS: "The service stations?"

ANTRUP: "Yes."

URBAHNS: "The ones you're in here for?"

ANTRUP: "Yes."

---

3. The rights waiver form provided:

"Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have a right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion has been used against me."

Antrup argues that the statement should have been suppressed because he did not understand what he was signing when he signed the rights waiver form.

We conclude that Antrup understood the nature of the rights form, the nature of his rights, and that he voluntarily waived those rights. Trooper Urbahns testified that in his opinion Antrup knew what he was doing when he signed the form and that he voluntarily waived his rights. At the suppression hearing Antrup himself admitted that he was familiar with the form. Antrup had already retained counsel and had consulted with him at the time of the alleged waiver. Although he had been advised by counsel not to speak with any police officers, Antrup personally summoned Urbahns for the purpose of making a statement. Further, after making the statement in question, Antrup exercised his right not to say anything more without his attorney present. Although a signed waiver of rights is never conclusive, *Emler v. State* (1972), 259 Ind. 241, 286 N.E.2d 405, none of the facts before us refute the contention that Antrup voluntarily waived his rights. Antrup's actions demonstrated that he understood that he could not be compelled to speak to police; this principle is the primary focus of those rights a defendant possesses when he is interrogated by law enforcement officers.

The contention that the statement was inadmissible because Antrup's attorney had instructed police not to speak with Antrup is without merit. On his own initiative Antrup sought out Urbahns for the purpose of making a statement; as examined *supra*, Antrup did so despite his awareness that his attorney advised him to speak to no one. *See Weaver v. State* (1966), 247 Ind. 315, 215 N.E.2d 533.

### III.

### Unreasonable Search

We do not agree with Antrup's contention that certain evidence admitted at trial was the product of an unreasonable search of Antrup's residence and should have been suppressed. The record discloses that after Antrup voluntarily accompanied police to the city police station for questioning, his mother called the police and

indicated that she and Antrup's father had found a large sum of money in the closet of a bedroom shared by Antrup and his younger brother. When Trooper Urbahns later arrived at the house, Antrup's mother led him to the bedroom closet and showed him the money.

No evidence supports the conclusion that Trooper Urbahns had committed an unreasonable search. Antrup's mother found the money and turned it over to him. Constitutional proscriptions against unreasonable searches and seizures are intended only to protect against such actions by the government. Neither the state nor the federal provisions apply to the acts, however unauthorized, of private individuals. *Zupp v. State* (1972), 258 Ind. 625, 283 N.E.2d 540; *Gunter v. State* (1971), 257 Ind. 524, 275 N.E.2d 810.

## IV.

### Misconduct

During his summation the prosecutor remarked:

"Now, Ladies and Gentlemen, it's readily apparent that . . . [defense counsel's] concept of reasonable doubt is a very high one. I doubt if his concept of reasonable doubt could ever be met. I doubt if we could ever get a conviction of anybody using his rationale. As usual, all the defense counsel tried to do. . . ."

Antrup objected to these remarks and now contends that they amounted to misconduct. For the prosecutor's remarks to be grounds for reversal, they must be so inflammatory or prejudicial in their persuasive effect as to have placed the defendant in grave peril. *Phelps v. State* (1977), 266 Ind. 66, 360 N.E.2d 191; *Hackett v. State* (1977), 266 Ind. 103, 360 N.E.2d 1000. We conclude that the prosecutor's remarks did not reach that standard and did not amount to misconduct.[4]

4. Antrup has raised as error other remarks of the prosecutor at summation. Antrup did not object to these remarks at trial, however, and he did not ask the trial court to admonish the jury to disregard them. This alleged error is therefore waived. *Bradburn v. State* (1971), 256 Ind. 453, 269 N.E.2d 539; *Holland v. State* (1976), 171 Ind. App. 276, 356 N.E.2d 686.

## V.

### Instruction No. 12

Antrup's argument that the trial court erred in giving its Instruction No. 12 and in refusing his tendered instruction is also without merit. The instruction concerns the credibility of witnesses, and it was given both preliminarily and finally. The portion of the instruction to which Antrup objects is as follows:

"If you find a conflict in the testimony of the witnesses that you cannot reconcile, then it is your province to choose whom you will believe and whom you will not believe."

Antrup submits that this language misleads the jury in that it directs the jurors to disbelieve testimony *only if* it is unable to reconcile conflicting testimony.

The first paragraph of Instruction 12 advises the jury (1) not to disregard a witness's testimony without due consideration and just cause, and (2) that if it finds a conflict in testimony that it cannot reconcile, then it should decide whom it will believe and whom it will not. The instruction properly advised the jury on its duty; it is the jury's task to sort the evidence and select those witnesses whom they choose to believe and reject the conflicting testimony from witnesses they feel have lower credibility. *Williams v. State* (1976), 264 Ind. 441, 346 N.E.2d 579; *Hunter v. State* (1977), 172 Ind. App. 397, 360 N.E.2d 588. A rule of law is not per se erroneous just because it is not worded in a particular way. *Hitch v. State* (1972), 259 Ind. 1, 284 N.E.2d 783.

The judgment is affirmed.

Lowdermilk, J., (by designation), concurs;

Garrard, J., concurs in result.

NOTE—Reported at 373 N.E.2d 194.