THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN G. COLAVECCHIO, Appellant.

Fourth Department, July 1, 1960.

*Alan M. Brickman* for appellant.

*Charles J. Miller, Assistant District Attorney,* for respondent.

BASTOW, J.   Defendant appeals from a judgment convicting him of grand larceny, first degree.   He was sentenced to prison for a term of 4 to 8 years as a first felony offender.   It is plain from the record that he is of subnormal mentality.   He was unable to state his exact age but on different occasions expressed the opinion that he was 20, 24 or 26.   At an early age he was placed in a home for infant children and when 7 or 8 was committed to the Syracuse State School for mental defectives where he remained until he entered the Army.   After three months' service he was given a medical discharge.

In the latter part of 1958 he was employed as a car washer by a motorcar dealer in Syracuse.   On December 18 he was dis-

charged by his employer for unauthorizedly driving a motor vehicle from the yard to the wash rack. Later in the same day he returned and drove away one of the automobiles owned by his recent employer. He drove the car about the city until a late evening hour when he wrecked the vehicle while being chased by police officials. His apprehension followed.

The indictment contained two counts. The first charged a larceny of the automobile with intent to deprive the owner of the use thereof and to appropriate the same to the use of defendant. The second count charged an unauthorized use of the car without the consent of the owner in violation of section 1293-a of the Penal Law. In the light of the evidence it is difficult to understand why the prosecutor undertook the task of proving a common-law larceny as distinguished from the other count charging an unauthorized use of the vehicle. The court in its charge stated that it was defendant's " claim that at the time he took this car he had no intent to deprive or defraud the owner of its property **or to appropriate it to his own use.**" The court went on to define the necessary ingredients of intent. After six hours deliberation the jury returned and asked for clarification of the word "intent". **The court complied** but again directed the attention of the jury to the other count involving unauthorized use of the vehicle. Subsequently, the jury returned a verdict of guilty of common-law larceny and not guilty of the unauthorized use of the vehicle.

In our opinion that verdict was against the weight of the credible evidence. To establish the crime of larceny under the special automobile theft statute (Penal Law, § 1293-a) it is not necessary to show any specific criminal intent other than proved by the act itself. (*People* v. *Nieman* 285 App. Div. 1165.) But to sustain the verdict convicting defendant of a common-law larceny there must be proof of " the taking and carrying away of personal property of another *with the specific intent to steal such property* " (*People* v. *Levan,* 295 N. Y. 26, 33) and must contemplate such a permanent appropriation as deprives the owner of the property. (*People* v. *Kenney,* 135 App. Div. 380.)

The distinction has been frequently pointed out since the enactment in 1909 of section 1293-a. (Cf. *Schenectady Varnish Co.* v. *Automobile Ins. Co.,* 127 Misc. 751, 755; see, also, *People* v. *Ramistella,* 306 N. Y. 379, 385.)

Inasmuch as a new trial is required we direct attention to certain rulings that, in our opinion, were erroneous. The present record reeks of appellant's mental deficiency. His education had ended in the fourth grade. When called as a witness he was asked to read the written statement given to the police. He was

unable, with a few exceptions, to recognize any word of more than two syllables. Following a previous misdemeanor conviction he had been transferred to Matteawan State Hospital. Following his arrest on the present charge the penitentiary physician reported to the court that defendant should be confined in a mental hospital. An order was made pursuant to section 658 of the Code of Criminal Procedure for appellant's transfer to the Syracuse Psychiatric Hospital for 60 days to be examined to determine the question of his sanity. Thereafter, it was reported that he was not in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him or the proceedings or of making his defense. (Code Crim. Pro., § 662.)

Upon the trial defendant called one of the psychiatrists, who had participated in this examination. An attempt was made by various questions to elicit from the doctor the mental examinations made of appellant and the resulting findings, conclusions and opinions of the expert. All such lines of inquiries were effectively blocked by rulings of the court sustaining objections of the prosecution. Upon cross-examination, however, the District Attorney was permitted to establish by the witness over defendant's objection that from the doctor's examination he was of the opinion that defendant was able to understand the charges against him and to prepare and make his defense. The trial court went further and by its questions to the witness disclosed that a report containing similar findings and conclusions had been submitted to the court. Of course, section 662 of the Code of Criminal Procedure provides that such report shall not be received in evidence upon the trial. It may not be circumvented by having the examining psychiatrist testify to the contents thereof. (Cf. *People* v. *Draper,* 278 App. Div. 298, 305.)

Our view of the case, however, is broader than this one procedural aspect. The defense should have been permitted to place in evidence the testimony of the psychiatrist, who had recently examined appellant. The trial court was of the opinion that the testimony must be relevant to a defense under section 1120 of the Penal Law to establish that defendant was laboring under such a defect of reason as not to know the nature and quality of the act he was doing and not to know that the act was wrong.

As we have seen, the People undertook to prove that defendant took the automobile with the specific intent to steal it and with the further intent to permanently appropriate it to his own use and to deprive the owner of the use thereof. The jury was troubled by the subject of intent. In the lay language of the

jury foreman the court was asked "how much premeditation is required to constitute intent"? We recognize that courts of various States are divided as to whether proof of mental deficiency, which does not show legal irresponsibility, is admissible (cf. I Wharton's Criminal Law & Procedure [Anderson], § 41). The question has most frequently arisen in homicide cases where the issue of premeditation is presented. In the early case of *Sindram* v. *People* (88 N. Y. 196, 201) such proof was held properly rejected when offered not to prove insanity but to show that the intellect was such that the defendant could not premeditate or deliberate. (See, also, *People* v. *Burgess,* 153 N. Y. 561, 569.) In *People* v. *Moran* (249 N. Y. 179, 180) however, the principle was enunciated that "Feebleness of mind or will, even though not so extreme as to justify a finding that the defendant is irresponsible, may properly be considered by the triers of the fact in determining whether a homicide has been committed with a deliberate and premeditated design to kill, and may thus be effected to reduce the grade of the offense."

The American Law Institute in its tentative draft of the Model Penal Code has the following provision: "(1) Evidence that the defendant suffered from a mental disease or defect shall be admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense." (Tentative Draft No. 4, § 4.02.) In the comment to this section it is said in part that "If states of mind such as deliberation or premeditation are accorded legal significance, psychiatric evidence should be admissible when relevant to prove or disprove their existence to the same extent as any other relevant evidence."

In the posture in which this appeal comes to us we conclude that the rejected testimony was admissible not for the purpose of exempting defendant from criminal responsibility under the insanity test, but as bearing upon the question of whether he possessed, at the time he committed the act, the necessary criminal intent proof of which was required to convict under the first count of the indictment.

The judgment should be reversed on the law and facts and a new trial granted.

Present — WILLIAMS, P. J., BASTOW, GOLDMAN, HALPERN and McCLUSKY, JJ.

Judgment of conviction unanimously reversed on the law and facts and a new trial granted.