**Ronald E. VEVERKA, Appellee,**

v.

**Paul T. CASH, Appellant.**

No. 65716.

Supreme Court of Iowa.

April 21, 1982.

Michael Figenshaw and Marsha K. Ternus of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant.

Dennis F. Chalupa and Bradley McCall of Brierly, McCall, Girdner & Chalupa, Newton, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, ALLBEE, and McGIVERIN, JJ.

ALLBEE, Justice.

Ronald E. Veverka was convicted of five counts of first degree murder, violations of sections 690.1 and 690.2, The Code 1975, after five persons died in a fire at the Coronado Apartments in Des Moines on February 9, 1977. The convictions, based on a felony murder theory with arson as the underlying felony, were affirmed by this court in *State v. Veverka*, 271 N.W.2d 744 (Iowa 1978). Veverka thereafter brought this civil action against his former psychiatrist, Dr. Paul T. Cash, alleging that the doctor's negligent treatment and subsequent misdiagnosis resulted in Veverka's conviction and imprisonment as an innocent man.

In his amended answer, Dr. Cash alleged as affirmative defenses, *inter alia*, that public policy barred any recovery by Veverka of damages flowing from his conviction and imprisonment,[1] and that Veverka was barred by issue preclusion principles from relitigating the question of his guilt or innocence. Dr. Cash then raised the issue preclusion question by way of a motion to adjudicate law points, and the public policy question by way of a motion for partial summary judgment. Trial court denied both motions,[2] and we granted Dr. Cash's application for an interlocutory appeal.

I. *Effect of Cole v. Taylor.*

Sometime after trial court ruled on the public policy question raised in Dr. Cash's

[1]. In addition to damages flowing from his conviction and imprisonment, Veverka also seeks damages for burn injuries received during the fire and for physical and mental injuries suffered *before* the date of the fire. Veverka's right to pursue those categories of damage is not at issue in this appeal.

[2]. Trial court did sustain a portion of Dr. Cash's summary judgment motion, relating to a *res ipsa loquitur* theory alleged in plaintiff's petition, which is not relevant to this appeal.

motion for partial summary judgment, this court decided a similar question in *Cole v. Taylor*, 301 N.W.2d 766 (Iowa 1981). In *Cole*, a woman who had been convicted of murder sued her psychiatrist for negligently failing to prevent her from committing that crime. Specifically, she alleged that her psychiatrist knew she had violent inclinations and was considering killing her former husband; that her psychiatrist failed to curb those inclinations by his treatment of her, failed to restrain her by hospitalization, and failed to warn her former husband of any impending danger. *Id.* at 767. On appeal, this court held that public policy barred Cole from recovering damages arising from her own criminal act, citing the general rule that

> a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or to maintain a claim for damages based on his own wrong or caused by his own neglect, ... or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws.

*Id.* at 768 (quoting 1 C.J.S. Actions § 13, at 996–97 (1936)).

In the case at bar, Veverka argues that the *Cole* rule and its underlying rationale are not applicable to him because, unlike Cole, who did not dispute her criminal guilt in the subsequent civil suit, Veverka alleges that he was innocent of the crime of which he was convicted. The sole basis upon which Veverka seeks to establish his innocence in this civil action is by proving the defense of diminished capacity. In this regard, however, we must consider a threshold question not addressed by the parties: Is diminished capacity a defense to the crime of which Veverka was convicted? If not, proof of diminished capacity would not establish his innocence and therefore would provide no basis for avoidance of the *Cole* rule.

II. *Diminished capacity as a defense.*

 In Iowa, proof of diminished mental capacity, or diminished responsibility, is admissible on the issue of the defendant's ability to form a *specific* intent, where such intent is an element of the crime charged. *Long v. Brewer*, 253 N.W.2d 549, 557 (Iowa 1977); *State v. Barney*, 244 N.W.2d 316, 318 (Iowa 1976). Accordingly, diminished capacity is *not* recognized as a defense to crimes which require only a general intent. *See* 4 J. Yeager & R. Carlson, *Iowa Practice* § 142 (1979) ("general intent ... is not negated by diminished capacity").

 As noted earlier, Veverka was convicted of first degree felony murder, a violation of sections 690.1 and 690.2, The Code 1975. The "murder" involved in a felony murder charge does not require proof of deliberation and premeditation, as do other forms of first degree murder under section 690.2. Rather, the mental element which must be proved is the same as that in second degree murder: "malice aforethought, either express or implied." *See* §§ 690.1, .3, The Code 1975. In the absence of the premeditation requirement, murder is not a specific intent crime and therefore is not subject to the defense of diminished capacity. *State v. Gramenz*, 256 Iowa 134, 142–43, 126 N.W.2d 285, 290–91 (1964). Thus, diminished capacity is not a defense to a felony murder charge unless the underlying felony is a specific intent crime.

Accordingly, we next consider whether the underlying felony in Veverka's case—i.e., arson, as defined in section 707.1, The Code 1975—is a specific or merely a general intent crime. In *Eggman v. Scurr*, 311 N.W.2d 77 (Iowa 1981), this court, discussing the difference between specific and general intent, noted that the "most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." *Id.* at 79 (quoting W. LaFave & A. Scott, Jr., *Handbook on Criminal Law* § 28, at 202 (1972)). We also quoted with approval the following statement:

> When the definition of a crime consists of only the description of a particular act, without reference to intent to do a fur-

ther act or achieve a further consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence; the crime is deemed to be one of specific intent. *Id.* (quoting P. Johnson, *Criminal Law* 329 (1975)).

With the foregoing distinction in mind, we turn to the relevant portion of the definition of arson in former Code section 707.1: "Any person who willfully and maliciously sets fire to or burns or causes to be burned . . . any dwelling house . . . shall be guilty of arson."

The mental elements of this statutory definition—"willfully and maliciously"— echo the common law definition of arson, which required a "willful and malicious burning." A. Curtis, *The Law of Arson* § 57 (1936). In *State v. Dunn*, 199 N.W.2d 104, 107 (Iowa 1972), this court observed that the word "willfully," as used in the arson statute, means deliberately and intentionally, as opposed to accidentally. The court also noted that the malice required by the arson statute could be inferred from the fact that the defendant intentionally committed the proscribed act, without justification or lawful excuse. *Id.* at 108. These interpretations parallel those under the common law definition of arson. *See* A. Curtis, *supra*, §§ 57, 58.

At common law, "the only inquiry in respect to intent [was] whether the accused intentionally set the fire or whether it was of accidental origin." *Id.* § 57. Thus, common law arson was a crime of general intent.· *See also* 6A C.J.S. Arson § 6 (1975) ("In the absence of a statute to the contrary, a general intent to burn some structure is sufficient intent to constitute the crime of arson.") It is true that "[s]tatutory provisions may alter the common law rule by requiring a specific intent, such as an intent to destroy." [3] A. Curtis, *supra*, § 57. In the absence of words indicating such a meaning, however, an arson statute will not be construed as requiring a specific intent to accomplish some result, such as destruction, but merely a general intent to commit the criminal act of burning. *Id.* § 63.[4]

■ Because section 707.1 uses the same language as the common law in describing the mental elements of arson, and because there is no language in section 707.1 indicating that the legislature intended to alter the common law rule by requiring a specific intent, it appears that arson, as defined in that section, is a crime of general intent only.

We are cognizant of suggestions by certain commentators that arson was a specific intent crime in Iowa prior to the revision of the criminal code which took effect in 1978.

**3.** An example of an arson statute which has been held to require a specific intent is the Texas statute cited in *Romo v. State*, 593 S.W.2d 690, 693 (Tex.Cr.1980). That statute stated, in pertinent part: "A person commits [arson] if he starts a fire or causes an explosion . . . without the effective consent of the owner and *with intent to destroy or damage the owner's building* or habitation." *Id.* (emphasis added).

**4.** *See also* R. Perkins, Criminal Law 219–20 (2d ed. 1969):

In brief, the state of mind which constitutes guilt of common-law arson, assuming the other elements of the crime are present and there are no circumstances of justification, excuse or mitigation, is either an intent to burn the dwelling of another, or an act done under such circumstances that there is obvi-

ously a plain and strong likelihod [sic] of such a burning.

Modern statutes on arson frequently make use of the phrase "wilfully and maliciously" although some use only "wilfully" or only "maliciously" or employ both joined by the word "or". In view of the history of the offense these should all be held to codify the state of mind required for common-law arson and there has seldom been any indication to the contrary. In rare instances enactments have made a definite change in the mental element required for arson . . . by using the customary words followed by the phrase "with intent to destroy it". . . . [This] adds to the requirement of a malicious burning a specific intent which must be alleged in the ·indictment or information and established by proof.

(Footnotes omitted.)

*See* 4 J. Yeager & R. Carlson, *supra*, § 272 ("Arson as defined here [in the revised criminal code] is no longer a specific intent crime."); Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 347 (1979–80) (citing Yeager & Carlson, *supra*, § 272). Those commentators do not explain their reasons for adopting that view of the pre-revised arson statute; however, they may have based their conclusion on a statement made by this court in *State v. True*, 190 N.W.2d 405, 406 (Iowa 1971), to the effect that certain evidence offered at an arson trial "was intended to negate a specific intent to burn a building as is required by section 707.2, the Code." The intent involved and discussed in *True* was the intent to burn a building. Under the standard delineated in *Eggman*, 311 N.W.2d at 79, that intent is general rather than specific because it does not go beyond an intent to commit the *actus reus* of the crime. Therefore, the intent element in *True* should have been called general intent. The case does not support a holding that arson under former section 707.1 was a specific intent crime.

Based on the foregoing, we hold that arson, as defined in section 707.1, The Code 1975, is a crime of general intent only. As such, it is not subject to the defense of diminished capacity. Likewise, that defense is inapplicable to a felony murder charge in which section 707.1 is the underlying felony.

III. *Conclusion.*

■ The parties have focused their arguments on whether issue preclusion principles bar Veverka from litigating the issue of his diminished capacity in this civil suit. We need not reach that question, however,[5] because of our conclusion that Veverka's asserted diminished capacity would not be material to his guilt or innocence in any event.

There being no genuine issue as to any material fact, we conclude that Dr. Cash is

5. We also need not reach the question, briefed by the parties, concerning whether Veverka's criminal act or the jury's verdict of guilty was a

entitled to judgment as a matter of law under the rule of *Cole v. Taylor*, 301 N.W.2d at 768. *See* Iowa R.Civ.P. 237(c). Accordingly, trial court's denial of Dr. Cash's motion for partial summary judgment must be reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

superseding cause barring recovery against Dr. Cash.