STATE of Iowa, Appellee,

v.

Donald Lee McVEY, Appellant.

No. 84–479.

Supreme Court of Iowa.

Nov. 13, 1985.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Rebecca L. Claypool, Asst. Atty. Gen., and James A. Smith, Co. Atty., for appellee.

McCORMICK, Justice.

We granted further review of a court of appeals decision in order to determine whether the defense of diminished responsibility is available to a person charged with theft based on exercising control over stolen property in violation of Iowa Code section 714.1(4) (1983). We hold that the defense is unavailable. Because the court of appeals and district court reached the same conclusion in affirming defendant's conviction, we affirm the decision of the court of appeals and the judgment of the district court.

Defendant Donald Lee McVey was charged in October 1983 with second-degree theft based on exercising control over a stolen motor vehicle under Code sections 714.1(4) and 714.2(2) and with attempting to elude a pursuing law enforcement vehicle in violation of Code section 321.279. The State's evidence was that defendant and a companion escaped from a prison farm and stole an automobile in Fort Madison. They were subsequently observed in the automobile in Urbandale and were apprehended and charged after a high speed chase.

Before trial defendant gave the State notice of a defense of diminished responsibility in accordance with Iowa Rule of Criminal Procedure 11(b)(1). The State moved to strike the defense on the ground it is unavailable as a defense to the charges involved. The trial court sustained the State's motion, and defendant was precluded at trial from offering the testimony of a psychologist on the issue of diminished responsibility. After his conviction and sentences on the two charges, defendant appealed on two grounds, including a claim of error in the ruling striking the defense. The court of appeals affirmed his conviction. Subsequently we granted further review to respond to defendant's contention that the defense of diminished responsibility is available to one charged with theft based on control of stolen property in violation of section 714.1(4). He does not challenge the remainder of the court of appeals decision.

In relevant part, section 714.1(4) makes it theft for a person to "[exercise] control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen, unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate public officer." In *State v. Hutt*, 330 N.W.2d 788, 790 (Iowa 1983), we held that the mens rea of this offense requires proof that the accused actually believe the property is stolen. We have also held that the offense does not require proof of specific intent.

■ The offense is a general intent crime because it is complete without intent to do a further act or achieve a further consequence. See *Eggman v. Scurr*, 311 N.W.2d 77, 79 (Iowa 1981). General criminal intent exists when from the circumstances the prohibited result may reasonably be expected to flow from the voluntary act itself "irrespective of any subjective desire to have accomplished such result." *State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976). Thus the crime of theft based on exercising control over stolen property does not require proof of any

intent beyond the voluntary act of exercising the prohibited control over property the accused knows is stolen.

■ In contending the defense of diminished responsibility is available in this case, defendant recognizes that this court has previously held that the defense is not available to crimes that require only a general criminal intent. See *Veverka v. Cash*, 318 N.W.2d 447, 449 (Iowa 1982). He argues nevertheless that the statutory requirement of proof of knowledge the property was stolen introduces a special mental element that should be subject to the defense. This argument necessitates review of the nature and scope of the diminished responsibility defense.

The diminished responsibility defense was first recognized by this court in *State v. Gramenz*, 256 Iowa 134, 126 N.W.2d 285 (1964). It is a common law doctrine that "permits proof of defendant's mental condition on the issue of [the defendant's] capacity to form a specific intent in those instances in which the state must prove defendant's specific intent as an element of the crime charged." *Id.* at 139, 126 N.W.2d at 288. The court held that evidence of an accused's mental unsoundness may be received to negate specific intent, premeditation and deliberation on a charge of first degree murder, refusing, however, to allow the evidence on the elements of malice aforethought and general criminal intent. The court noted:

> While malice aforethought is the specific state of mind necessary to convict of murder, it is far different from the specific intent which is a necessary element of murder in the first degree. It may be express or implied from the acts and conduct of defendant.
>
> . . . .
>
> It appears ... that testimony sufficient to establish defendant's lack of mental capacity to have malice aforethought would also be sufficient to satisfy the requirements of the right and wrong test and entitle defendant to an acquittal on a

plea of insanity rather than a reduction of the sentence to manslaughter.

*Id.* at 142, 126 N.W.2d at 290.

Subsequently this court held that the defense is available to any crime in which specific intent is an element. *See State v. Barney*, 244 N.W.2d 316, 318 (Iowa 1976). The court has continued to recognize the defense even though it is not listed among the special defenses to crime delineated in Code chapter 701. *See State v. Collins*, 305 N.W.2d 434, 436 (Iowa 1981). The court has also continued to contrast the defense with the insanity defense, distinguishing diminished responsibility on the ground it allows evidence of mental unsoundness establishing lack of capacity to form a requisite criminal intent rather than requiring proof of the more aggravated kind of distortion of the thinking process required for the absolute defense of insanity. *Id.* at 436–37.

As of January 1, 1978, the General Assembly codified the insanity defense. *See* 1976 Iowa Acts ch. 1245, § 104 (codified at Iowa Code § 701.4 (1979)). The statute incorporates the M'Naghten standard previously adopted by this court as a common law rule. This standard requires proof that the person suffered at the time of the offense "from such a diseased or deranged condition of the mind so as to render the person incapable of knowing the nature and quality of the act he or she is committing or incapable of distinguishing between right and wrong in relation to that act." *Id.* This is obviously a much more stringent standard than is involved in the diminished responsibility defense. Section 701.4 was recently amended to impose the burden on the defendant to prove an insanity defense by a preponderance of the evidence. *See* 1984 Iowa Acts ch. 1320, § 1.

▌ Both defenses nevertheless are absolute defenses to specific intent crimes. This was the situation when the M'Naghten rule was codified. The question is whether diminished responsibility should be extended, despite codification of the insanity defense, so that it is also an absolute defense to a general intent crime that re-quires proof of guilty knowledge. We conclude the defense should not be extended beyond specific intent crimes.

In formulating the insanity defense the legislature defined limits upon the effect of evidence of mental disease or defect relating to criminal culpability generally. This court earlier drew the same line at common law in the *Gramenz* case. It would undercut the legislative policy inherent in the insanity defense for this court to extend the defense of diminished responsibility.

Insanity and mens rea are legal concepts without psychiatric counterparts. As legal concepts they are used to establish limits to legal culpability. The extent to which evidence of mental impairment will be permitted to affect criminal responsibility is therefore a legal question. The argument that evidence of mental impairment should be received because it bears on the mens rea of an offense presupposes that the mens rea requirement has a legal meaning which makes the evidence from the psychological model relevant. *See, e.g.,* 1 P. Robinson, *Criminal Law Defenses* § 64(c) at 283 (1984) ("the issue ... is a complex one that is tied to one's theory of the nature of the mens rea requirements for criminal offenses").

A prominent psychiatrist observed that, "When the law says that the absence of intent renders one incapable of committing a crime, it really means that the triers are incapable of attaching guilt upon the offender, i.e., of inflicting punishment on one who actually committed a harm which if done by a sane person would be punishable." P. Roche, *The Criminal Mind* 87 (1958). In practical terms a court's refusal to recognize the relevancy of evidence of mental impairment short of legal insanity results from the court's understanding of the legislative intention concerning the blameworthiness of the defendant's conduct. To the extent evidence of mental impairment that does not meet the legal insanity standard permits an accused to avoid responsibility for otherwise culpable conduct, the policy inherent in the insanity defense is undermined. *See* W. LeFave

and A. Scott, *Handbook on Criminal Law* § 42 at 331–32 (1972).

■ In view of the fact the Iowa common law recognized mental impairment other than legal insanity as a defense only to specific intent crimes at the time the insanity defense was codified, we believe the General Assembly drew the line at that point. The legislature thus established the applicable legal standard for deciding culpability upon evidence of mental impairment in cases requiring proof only of guilty knowledge or general criminal intent accompanying a prohibited act. The mens rea of those crimes is not affected by evidence of mental impairment that does not meet the insanity standard. Therefore we hold that the diminished responsibility defense is available only to specific intent crimes. A similar limitation appears to exist in most other jurisdictions that recognize the defense.[1]

No reversible error has been established.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I dissent.

The decision of the court in the present case perpetuates a pattern of mischaracterization and obfuscation which now thoroughly permeates our decisions on the subject of diminished responsibility in criminal cases. The result is to preclude this defendant and other persons charged with crimes from offering evidence relevant and material to the basic elements of the charge which might be favorable to the accused.

There is a popular maxim among debaters that, if you allow your opponent to state the issue, your chances of success are indeed slight. The majority opinion utilizes this principle to support its result by treating the issue in the present case as if it were whether the "defense of diminished responsibility" should be further extended. In reality, the issue presented is whether a court in the trial of a criminal case may exclude relevant and material evidence concerning a basic element of the offense charged. Placing labels on similar concepts in order to foster accurate analysis and facilitate uniformity of treatment among like things is acceptable only as long as the concepts which are identically labeled are in fact similar. What something in fact is and how something in fact operates cannot be established by labels.

Commencing with the seminal decision in *State v. Gramenz*, 256 Iowa 134, 126 N.W.2d 285 (1964) and continuing through

---

1. *See generally United States v. Brawner*, 471 F.2d 969 (D.C.Cir.1972) (doctrine limited to evidence of specific intent); *People v. Cruz*, 26 Cal.3d 233, 162 Cal.Rptr. 1, 605 P.2d 830, 162 Cal.Rptr. 1 (1980) (diminished capacity is a defense to all specific intent crimes); *State v. Baker*, 691 P.2d 1166 (Hawaii 1984) (where mental condition does not amount to legal insanity, the diminished capacity may negate specific intent); *Bimbow v. State*, 161 Ind.App. 338, 315 N.E.2d 738 (1974) (recognizing defense to specific intent crime); *State v. Dargatz*, 228 Kan. 322, 614 P.2d 430 (1980) (evidence of mental defect which negates specific intent is admissible); *Koester v. Commonwealth*, 449 S.W.2d 213 (Ky.1969) (recognizing relevancy of evidence of mental condition in specific intent crimes); *People v. Denton*, 138 Mich.App. 568, 360 N.W.2d 245 (1984) (diminished responsibility defense may be used only for specific intent crimes); *Geary v. State*, 91 Nev. 784, 544 P.2d 417 (1975) (abnormal mental condition not amounting to insanity can be considered only in relation to specific intent element); *People v. Colavecchio*, 11 A.D.2d 161, 202 N.Y.S.2d 119 (1960) (expert testimony admissible to negate necessary criminal intent for specific intent crimes); *State v. Francis*, 30 Or.App. 359, 567 P.2d 558 (1977), *aff'd*, 284 Or. 621, 588 P.2d 611 (defense available only to specific intent crimes); *Com. v. Brantner*, 486 Pa. 518, 406 A.2d 1011 (1979) (diminished capacity is recognized as a defense to specific intent crimes); *State v. Huber*, 356 N.W.2d 468 (S.D.1984) (doctrine of diminished responsibility may not be invoked as to general intent crimes); *State v. Smith*, 136 Vt. 520, 396 A.2d 126 (1978) (diminished capacity may operate to reduce degree of crime rather than to excuse its commission); *Peterson v. State*, 586 P.2d 144 (Wyo.1978) (diminished capacity is applicable for specific intent crimes where abnormal condition does not constitute legal insanity); Annot., 16 ALR 4th 666 (1982); 22 ALR 3d (1968).

the discussion of diminished responsibility in *State v. Collins,* 305 N.W.2d 434, 436 (Iowa 1981) and the application of that doctrine in *State v. Barney,* 244 N.W.2d 316, 318 (Iowa 1976); *Long v. Brewer,* 253 N.W.2d 549, 557 (Iowa 1977); and *Veverka v. Cash,* 318 N.W.2d 447, 449 (Iowa 1982), our characterization of the use of expert testimony negating an essential element of a criminal charge has been inaccurate. Unfortunately, this error in description has produced error in application. The fundamental flaw in the analysis upon which these decisions are based is the acceptance of the premise that "diminished responsibility" is a partial defense which reduces responsibility in some types of crimes. Clearly, it is not and never has been.

An illuminating description of the use of expert testimony to negate an element of a criminal charge is contained in the following commentary:

> Mental illness commonly negates an element without amounting to insanity. As a failure of proof defense, at least in cases where the defendant is still guilty of a lesser included offense, it is often called "partial responsibility" or "diminished capacity." Its name highlights the fact that it is something short of insanity; but it is nonetheless an unfortunate choice of terms because there is nothing *partial* about the defense. The mental illness either negates a required element of an offense or it does not, thereby providing a complete defense *to that offense* or providing no defense. It is true that many offenses, especially homicide offenses, have lesser included offenses with less demanding culpability elements. Thus mental illness may negate the culpability element of the greater offense but not the lesser offense. When this occurs, the net effect of the mental illness is to reduce the defendant's liability from the greater to the lesser.... However, this ultimate reduction effect results from the comparative culpability elements of the different offenses, not from a special rule that, when faced with diminished responsibility due to mental illness, generates dimin-

ished liability. If there is no lesser included offense, or if the mental illness also negates an element of any lesser included offense, the mental illness will prevent conviction altogether.

Robinson, *Criminal Law Defenses: A Systematic Analysis,* 82 Colum.L.Rev. 199, 206 (1982) (footnotes omitted) (emphasis in original).

The point which professor Robinson makes is fully applicable to the use of this type of evidence under Iowa law. The concept of partial defense exists only as an inaccurate label, spawned from the rhetoric of our decisions, but thoroughly, contradicted in the actual application of the doctrine. In the so-called specific intent crimes in which it has been allowed to operate, the doctrine of diminished responsibility in actual practice is a defense only in the respect that, in the common usage of language, any evidence presented by a defendant to negate the State's evidence is defensive in nature.

The majority seeks to show meaningful differences between specific intent crimes and general intent crimes through the use of definitions from our cases which have no bearing on the present problem. What difference does it make that a general intent crime has been said to be complete without intent to do a further act or achieve a further consequence? The important thing is that such crime is not complete unless all elements thereof, including the required mental state, have been shown. *Mens rea* elements may generally be lumped into three categories: (1) an intent to cause a particular result in the commission of the *actus reus* of the crime; (2) awareness of certain circumstances relating in some way to the *actus reus;* or (3) purposefulness of the acts constituing the *actus reus.* Robinson & Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond,* 35 Stanford L.Rev. 681, 694–97 (1983). The so-called specific intent crimes for which the majority permits evidence of diminished capacity fall under the first category. The present case falls under the second category. Other crimes

which we have recognized as general intent crimes fall under the third category. *See Eggman v. Scurr*, 311 N.W.2d 77, 79 (Iowa 1981).

We recognized in *Eggman* that there are a variety of mind sets, differing greatly in both form and substance, which are essential elements in the proof of general intent crimes. No reason has been suggested by the majority why there is any less need, in the interest of a fair trial, for the accused to be allowed to defend himself when charged with general intent crimes than is the case with respect to specific intent crimes. Nor does it appear that such distinction is constitutionally permissible in view of the holdings in *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 312–13 (1973) and *Washington v. Texas*, 388 U.S. 14, 22–23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019, 1025 (1967). The fact that no constitutional issue has been argued by the appellant in the present case does not relieve us of our responsibility to assure that our decisions pass constitutional muster with respect to matters of both form and substance.

The majority suggests that the evidence in question should not be admitted because there is not a psychiatric counterpart to the legal *mens rea* elements. This is inconsistent with the approach taken in the specific intent crimes. Moreover, such conclusion is not supported by any reference to a generally accepted psychiatric standard and, in the absence of such a standard, is an issue of fact which can only be determined on an ad hoc basis depending on the particular mental element involved and the nature of the proffered expert testimony. The *mens rea* elements of our statutory crimes, including those labeled as general intent crimes, have developed independently of psychiatric knowledge. But it has never been suggested that these elements, which vary greatly from crime to crime, do not relate to "actual" as opposed to "constructive" or "legally implied" states of mind. The use of expert psychiatric testimony therefore has no effect on what the elements of a crime are, but only on how they may be proved.

Although the court may properly develop by its case law the extent of an affirmative defense available to one who is otherwise guilty of a crime, it may not constitutionally limit the efforts of the accused to present relevant and material evidence tending to negate an essential element of the prosecution's case. In recognizing that a defendant should be permitted to offer evidence on the culpability elements of all crimes, not only specific intent crimes, the court in *Hendershott v. People*, 653 P.2d 385, 391 (Colo.1982) observed:

> The formulation and the limitation of affirmative defenses, however, must be distinguished from the accused's right to present reliable and relevant evidence to controvert the prosecution's case against him. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 312 (1973); *see Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (state statutory scheme which prevented an accused from securing coparticipant's testimony at trial denied the accused his constitutional right to compulsory process for obtaining witnesses in his favor).

The Colorado court proceeded to hold that, in all crimes in which the state is required to prove a particular mental element, "it defies both logic and fundamental fairness to prohibit a defendant from presenting reliable and relevant evidence that, due to a mental impairment beyond his conscious control, he lacked the capacity to entertain the very culpability which is indispensable to his criminal responsibility in the first instance." *Id.* at 393–94. Prior to its decision in the *Hendershott* case, the Colorado court had suffered some of the same misdirection in this area of the law that this court has experienced. It has now steered upon the correct course and so should we.