# IN THE SUPREME COURT OF IOWA

No. 141 / 06–0076

Filed October 17, 2008

**HEIDI ANN ANFINSON,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Further review of court of appeals decision affirming denial of postconviction relief. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Alfredo Parrish and Brandon Brown of Parrish Kruidenier Dunn Boles Gribble Cook Parrish and Gentry, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Cristen Douglass, Assistant Attorney General, John P. Sarcone, County Attorney, and Joe Weeg, Assistant County Attorney, for appellee.

**HECHT, Justice**.

Heidi Anfinson was convicted of second-degree murder for the drowning death of her infant son. In this postconviction relief action, we consider whether trial counsel rendered prejudicial ineffective assistance in failing to sufficiently inquire into and present evidence of Anfinson's postpartum depression in furtherance of her defense theory that the child's death was accidental. We conclude Anfinson's trial counsel provided ineffective assistance that resulted in prejudice. Accordingly, we reverse Anfinson's conviction and remand this case to the district court for a new trial.

## I.     Factual and Procedural Background.

Heidi Anfinson gave birth to a son, Jacob, on September 5, 1998. Fifteen days after his birth, Jacob went missing while in Anfinson's care. Jacob's father contacted the police, who began searching for the child. While officers were searching for Jacob, Anfinson and her husband were transported to the police station. Anfinson told the officers that while bathing Jacob, she left the room to use the telephone; and when she returned, she discovered Jacob had drowned. Anfinson led police to Saylorville Lake, where they discovered Jacob's body submerged under rocks in shallow water. During a later interview with police, Anfinson stated she "freaked" when she found Jacob's dead body in the bath water, put it in the car, took it to the lake, and placed it in the water.

The State charged Anfinson with first-degree murder and child endangerment. Iowa Code §§ 707.1, .2, 726.6(1), .6(2) (1997). Anfinson pled not guilty and the case proceeded to trial. The first trial resulted in a mistrial as the jury was unable to reach a unanimous decision. In a second trial involving the same charges, the jury convicted Anfinson of second-degree murder. *Id.* § 707.3. On direct appeal, the court of

appeals affirmed the conviction. *State v. Anfinson,* No. 00-0511 (Iowa Ct. App. July 3, 2002).

Anfinson filed an application for postconviction relief alleging ineffective assistance of counsel. She presented evidence tending to prove her trial counsel summarily dismissed the notion of raising insanity or diminished capacity defenses despite evidence she was suffering from severe postpartum depression at the time of Jacob's death. She also asserted trial counsel, who chose to present the defense theory that Jacob died accidentally, was ineffective in failing to present evidence of her postpartum depression in furtherance of that theory. Anfinson further contended trial counsel was ineffective in failing to object to the testimony of the investigating officers who described Anfinson's lack of emotion shown during the interview at the police station when she denied knowledge of Jacob's whereabouts.[1]

In a detailed ruling, the district court dismissed Anfinson's application. The court concluded trial counsel breached an essential duty by failing to investigate Anfinson's mental and physical condition, but reasoned Anfinson was not entitled to relief because she failed to prove the requisite prejudice resulting from the breach. The court also found Anfinson failed to prove prejudice resulting from the admission of the officers' testimony describing Anfinson's lack of emotion during questioning. The court of appeals affirmed the dismissal of the petition, and we granted further review.

---

[1]Before the district court and court of appeals Anfinson raised additional claims of ineffectiveness. Our opinion on further review is confined in this case to the grounds specifically asserted in her application for further review.

**II. Scope of Review.**

We review ineffective-assistance-of-counsel claims de novo. *State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008). To establish ineffective assistance of counsel, a claimant must demonstrate by a preponderance of the evidence "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006); *accord Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064–65, 2068, 80 L. Ed. 2d 674, 698 (1984). We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking. *State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999). To establish prejudice, a claimant must demonstrate " 'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698). The probability of a different result must be " 'sufficient to undermine confidence in the outcome.' " *Id.*

**III. Discussion.**

**A. Failure to Investigate and Assert Defenses Based on Postpartum Depression.** On our de novo review, we find that trial counsel was aware of the probability Anfinson suffered from postpartum depression after Jacob's birth and categorically rejected any suggestion that this condition be explored in her defense. Anfinson's sisters observed Anfinson behaving strangely soon after Jacob was born on September 5, 1998. While attending a baby shower, they observed numerous "sores" on Anfinson's legs and perceived her to be

"exhausted," "wooden," and "unjoyful."[2] Anfinson appeared to be afraid to handle Jacob.

On September 22, 1998, after trial counsel undertook Anfinson's defense, trial counsel and several of Anfinson's family members were present when Anfinson was released on bail. As they left the jail, an unidentified woman approached. The woman disclosed she had experienced postpartum depression, claimed she knew what Anfinson was going through, and attempted to hand an envelope to one of Anfinson's family members. Trial counsel snatched the envelope and proclaimed he "didn't want to hear any talk of postpartum depression." He was quoted in a newspaper article published the next day, suggesting postpartum depression was not a factor in the baby's accidental death.[3]

Although Anfinson was hospitalized on September 26, 1998 and medicated for depression, suicidal ideation, and panic attacks, trial counsel failed to request or obtain copies of Anfinson's medical records.[4] He also failed to conduct an investigation which would have divulged

---

[2]Anfinson initially told her sisters the "sores" were caused by mosquito bites, but later disclosed they were caused by self-mutilation as she plucked hairs from her legs and pubic area.

[3]Counsel made this public pronouncement without the benefit of a reasonable investigation of Anfinson's mental health. He described himself in the postconviction proceeding as a "media lawyer" and characterized his comments quoted in the newspaper article as an effort to ethically "manage" and "balance" the news in furtherance of Anfinson's accidental death defense. Counsel testified he "didn't want the public to even think of postpartum depression, because postpartum depression means you deliberately killed the baby."

[4]The records disclose the hospital staff assigned to Anfinson a GAF (Global Assessment Functioning) of ten at the time she was admitted to the hospital. Although this rating is based on a medical professional's subjective rating, it suggests Anfinson was functioning at a very low level at the time of admission. Trial counsel explained he did not request copies of the hospital records because Anfinson represented she was bonded with the baby, claimed she was a good mother, and denied she was depressed. He consulted no psychiatrist or psychologist on the subject of Anfinson's mental state.

Anfinson experienced prior episodes of depression after she gave birth and consented to the adoption of her first child in 1980, and again following an abortion in 1985.

Additional evidence supports our finding trial counsel rejected from the outset the notion evidence of Anfinson's mental condition might be relevant to her defense. After Anfinson's discharge from the hospital, she was treated by a grief counselor for several months. When the counselor called to discuss Anfinson's mental state, trial counsel was dismissive of her opinion that Anfinson had exhibited symptoms consistent with postpartum depression.

Members of Anfinson's family also attempted on several occasions to communicate to trial counsel their concerns about Anfinson's mental state. Anfinson's father, who paid trial counsel's fees and litigation expenses, urged trial counsel to approve, and offered to pay for, a mental evaluation of Anfinson at the Menninger Clinic in Topeka, Kansas. Counsel rejected the idea, again affirming postpartum depression would play no part in the defense.[5] When Anfinson's sister and husband attempted to speak to trial counsel about their observations of Anfinson's mental state, he cautioned them against making comments to the press about postpartum depression and reminded them the defenses of insanity and diminished capacity would not be pursued.

Anfinson contends the evidence of her severe depression was essential not only to prove potential insanity and diminished responsibility defenses which were summarily and improvidently rejected by her trial counsel, but also to support the accidental death defense counsel presented unsuccessfully to the jury. The State contends trial

---

[5]Trial counsel told Anfinson's family he opposed the request for a mental evaluation on the ground it would be "fuel for the prosecution."

counsel breached no duty in rejecting insanity and diminished capacity defenses, and his assertion of the accidental death theory of defense was based on reasonable strategic considerations.

Generally, "ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). "[M]ere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Id.* at 143.

> [C]laims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney guaranteed a defendant under the Sixth Amendment.

*Id.* However, not all tactical or strategic decisions shelter an attorney from a claim of ineffectiveness. *Id.*

> While strategic decisions made after "thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," strategic decisions made after a "less than complete investigation" must be based on reasonable professional judgments which support the particular level of investigation conducted.

*Id.* (quoting *Strickland*, 466 U.S. at 690–91, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695).

Moreover, reasonable strategic considerations may justify the rejection of one theory of defense in favor of another theory reasonably perceived by counsel to be in the accused's best interest. *See Tollett v. Henderson*, 411 U.S. 258, 268, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235, 244 (1973); *State v. Wilkens*, 346 N.W.2d 16, 19 (Iowa 1984) (counsel not ineffective in making sound tactical decision to emphasize self defense rather than diminished capacity, and staying that course in preparing

and presenting case to jury). The postconviction court must not "assume the role of Monday morning quarterback in condemning counsel's judgment in choosing between what are frequently equally hazardous options available to him." *State v. Newman*, 326 N.W.2d 788, 795 (Iowa 1982). The real issue is not whether defense counsel's actions were successful, but whether they were "justifiable." *Pettes v. State*, 418 N.W.2d 53, 56–57 (Iowa 1988).

Keeping these principles in mind, we consider whether Anfinson met her burden to prove trial counsel provided ineffective assistance in failing to investigate and present evidence of her mental condition in furtherance of the potential defenses he rejected and the one defense he actually presented.

1.     *Insanity.*  The legal standard for an insanity defense in Iowa is codified at section 701.4 of the Iowa Code:

> A person shall not be convicted of a crime if at the time the crime is committed the person suffers from such a diseased or deranged condition of the mind as to render the person incapable of knowing the nature and quality of the act the person is committing or incapable of distinguishing between right and wrong in relation to that act. Insanity need not exist for any specific length of time before or after the commission of the alleged criminal act. If the defense of insanity is raised, the defendant must prove by a preponderance of the evidence that the defendant at the time of the crime suffered from such a deranged condition of the mind as to render the defendant incapable of knowing the nature and quality of the act the defendant was committing or was incapable of distinguishing between right and wrong in relation to the act.

We concur with the district court that Anfinson has failed to demonstrate a reasonable probability of the success, or even viability, of an insanity defense based on postpartum depression. Based on her responses to police questioning and a review of a report of a psychological evaluation conducted days after Jacob's death, the State's

mental health expert testified in the postconviction trial that at the time of Jacob's death Anfinson was not suffering from a mental disease or defect of the nature that would have supported an insanity defense. Even the mental health expert retained by Anfinson in connection with this postconviction action did not opine Anfinson was insane at the time of the child's death. We conclude Anfinson has failed to prove her trial counsel breached a duty in failing to investigate or present an insanity defense based on postpartum depression.

2. *Diminished responsibility.* In the alternative, Anfinson contends evidence of her postpartum depression would have supported a diminished responsibility defense. The doctrine of diminished responsibility has been recognized in Iowa as a matter of common law.[6] *State v. Gramenz*, 256 Iowa 134, 138–42, 126 N.W.2d 285, 288–90 (1964). "[D]iminished responsibility may be offered as a defense where an accused, because of a limited capacity to think, is unable to form a necessary criminal intent." *State v. Collins*, 305 N.W.2d 434, 436 (Iowa 1981). The diminished responsibility defense allows a defendant to negate the specific intent element of a crime by demonstrating due to some mental defect she did not have the capacity to form that specific intent. *Id.* at 437.

Evidence of diminished responsibility may not, however, negate general criminal intent, and is therefore not a defense to crimes which do

---

[6]We have alternatively described the common law concept of decreasing a legally sane individual's criminal liability on the basis of a mental defect as a defense of "diminished capacity" and "diminished responsibility." *See, e.g., State v. Decker*, 744 N.W.2d 346, 350 (Iowa 2008) (diminished capacity); *State v. Duncan*, 710 N.W.2d 34, 36 (Iowa 2006) (diminished responsibility). Iowa Rule of Criminal Procedure 2.11(11)(*b*), the defense notice requirement, refers to notice of intent to rely upon the defense of diminished responsibility. In the interest of remaining consistent with our rules of procedure, we will use the term "diminished responsibility" in this opinion.

not require proof of specific intent. *State v. McVey*, 376 N.W.2d 585, 586–87 (Iowa 1985) (evidence of mental unsoundness establishing lack of capacity to form the requisite criminal intent was not relevant in prosecution for theft perpetrated by exercising control over stolen property, a general intent crime); *Veverka v. Cash*, 318 N.W.2d 447, 449 (Iowa 1982) (diminished capacity not a defense to felony murder accomplished by arson); *Gramenz*, 256 Iowa at 142, 126 N.W.2d at 290 (evidence of diminished capacity not relevant to issues of malice aforethought and general criminal intent). *But see Hendershott v. People*, 653 P.2d 385, 393–94 (Colo. 1982) (holding reliable and relevant evidence of mental impairment may be presented to negate mens rea for crimes not involving a specific intent element). In *McVey*, we concluded the General Assembly, by statutorily recognizing the insanity defense, has limited the legal relevance of evidence of mental impairment to general intent crimes:

> In formulating the insanity defense the legislature defined limits upon the effect of evidence of mental disease or defect relating to criminal culpability generally. This court earlier drew the same line at common law in the *Gramenz* case. It would undercut the legislative policy inherent in the insanity defense for this court to extend the defense of diminished responsibility.
>
> Insanity and mens rea are legal concepts without psychiatric counterparts. As legal concepts they are used to establish limits to legal culpability. The extent to which evidence of mental impairment will be permitted to affect criminal responsibility is therefore a legal question. The argument that evidence of mental impairment should be received because it bears on the mens rea of an offense presupposes that the mens rea requirement has a legal meaning which makes the evidence from the psychological model relevant. *See, e.g.,* 1 P. Robinson, *Criminal Law Defenses* § 64(c) at 283 (1984) ("the issue . . . is a complex one that is tied to one's theory of the nature of the mens rea requirements for criminal offenses").

> . . . In practical terms a court's refusal to recognize the relevancy of evidence of mental impairment short of legal insanity results from the court's understanding of the legislative intention concerning the blameworthiness of the defendant's conduct. To the extent evidence of mental impairment that does not meet the legal insanity standard permits an accused to avoid responsibility for otherwise culpable conduct, the policy inherent in the insanity defense is undermined. *See* W. LaFave and A. Scott, *Handbook on Criminal Law* § 42 at 331-32 (1972).

*McVey*, 376 N.W.2d at 587–88. We therefore concluded the legislature intended to preclude evidence of mental impairment which falls short of insanity "in cases requiring proof only of guilty knowledge or general criminal intent accompanying a prohibited act." *Id.* at 588.

Although she was charged with first-degree murder, Anfinson was ultimately convicted of second-degree murder. To convict Anfinson of second-degree murder, the State was required to prove Anfinson drowned Jacob with malice aforethought. *See* Iowa Code § 707.3. The State was not required to prove Anfinson acted with a specific intent to kill Jacob. Iowa Code § 707.3; *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). As we explained in *Gramenz*, malice aforethought is not a specific intent mens rea:

> While malice aforethought is the specific state of mind necessary to convict of murder, it is far different from the specific intent which is a necessary element of murder in the first degree. It may be express or implied from the acts and conduct of defendant.
>
> . . .
>
> It appears . . . that testimony sufficient to establish defendant's lack of mental capacity to have malice aforethought would also be sufficient to satisfy the requirements of the right and wrong test and entitle defendant to an acquittal on a plea of insanity rather than a reduction of the sentence . . . .

*Gramenz*, 256 Iowa at 142, 126 N.W.2d at 290. Thus, in Iowa, a defendant may only attempt to negate malice aforethought with evidence

of insanity.  *Artzer*, 609 N.W.2d at 531 ("The defense[] of . . . diminished capacity [is] not available to a defendant charged with second-degree murder.  This is because . . . diminished capacity [is] only [a] defense[] to the specific intent element of a crime."  (Citations omitted.)).  We conclude Anfinson has failed to prove prejudice resulting from counsel's failure to present a diminished responsibility defense because she was not convicted of first-degree murder and evidence supporting such a defense was not relevant to any element of the second-degree murder charge of which she was convicted.

3.  *Accidental death.*  Although the evidence of Anfinson's postpartum depression could not have constituted a defense to the second-degree murder charge under our case law, Anfinson alternatively contends her trial counsel was nonetheless ineffective in failing to offer such evidence in furtherance of her accidental death defense.  We emphasize Anfinson's contention here is not that counsel was ineffective for failing to offer evidence of depression to respond to the State's evidence tending to prove criminal mens rea.  As she did not give notice of her intent to claim insanity or diminished capacity, evidence of Anfinson's compromised mental state was not admissible at trial to support those defenses.  She asserts, instead, her accidental death defense was severely prejudiced by counsel's failure to adduce and present expert testimony diagnosing her depression and placing three crucial and troublesome aspects of her conduct in a medical and noncriminal context.

Anfinson claims evidence of her depression should have been developed and offered in the criminal trial for three purposes which were crucial to a successful outcome of the accidental death defense.  If the defense was to have any chance of success, it had to supply for the fact-

finder a plausible explanation of (1) why Anfinson was so distracted and inattentive on September 20, 1998 that she left her two-week-old baby unattended in bath water; (2) why she behaved irrationally in subsequently taking Jacob's body to the lake, burying it under rocks, returning to her home, and going to sleep; and (3) why her affect was flat and emotionless later that same day when she was questioned by investigators about the child's disappearance. There was ample evidence of Anfinson's postpartum depression available to trial counsel if he had chosen to undertake the most rudimentary inquiry. He chose instead to rebuff all attempts made by Anfinson's family members and her grief counselor to educate him. He closed not only his ears, but also his eyes as he neglected to obtain medical records evidencing Anfinson's mental state.

The defense of "accidents happen" chosen and presented by trial counsel was highly unlikely to result in an acquittal if the three most troublesome aspects of Anfinson's conduct suggesting criminal culpability were left unexplained. Expert and lay testimony presented by Anfinson at the postconviction trial clearly suggests trial counsel could have developed strong evidence detailing the nature and extent of Anfinson's depression and provided an explanation for her bizarre behavior on the day of Jacob's death.[7]

The State asserts trial counsel's decision to eschew a defense based on Anfinson's mental state was a reasonable strategic choice. In

---

[7]Anfinson's mental health expert testified that the bizarre and unusual circumstances surrounding Jacob's death "cried out" for a psychiatric evaluation. In particular, the expert noted an evaluation is indicated "in a situation where somebody for unexplained reasons is suspected of harming an infant." Moreover, the expert opined Anfinson's mental state could have provided an explanation of why she exhibited poor judgment, panicked, and put the child in the lake.

support of this proposition, we are reminded both trial counsel and the State's expert witness viewed defenses based on Anfinson's compromised mental state (insanity and diminished responsibility) as "defenses of last resort" and inconsistent with the accidental death theory presented to both juries. Even though insanity and diminished responsibility defenses may have been incompatible with Anfinson's accidental death theory, evidence of the defendant's mental state was not incompatible with the notion that Jacob's death was accidental and, in fact, would have supported her claim that the drowning was due to her inattentiveness. Even if we were to accept as sound for purposes of our analysis trial counsel's assessment that insanity and diminished responsibility defenses are rarely successful, the decision to ignore evidence of Anfinson's compromised mental state was not a reasonable professional judgment excusing an investigation of the extent to which that mental state supported the defense theory of accidental death.

The State further contends trial counsel's failure to investigate Anfinson's mental state and its relevance to the accidental death theory was reasonable given Anfinson's representation to counsel in November 1998 that she was experiencing "situational depression" or "something like that." Any failure to investigate whether Anfinson experienced postpartum depression is further justified, the State claims, by Anfinson's failure to tell trial counsel she had lost weight late in the pregnancy, and her failure to disclose the history of sleep disturbance and self-mutilation. Indeed, trial counsel claims when he met with Anfinson he found her to consistently exhibit appropriate judgment, the ability to communicate, and the capacity to assist in her defense.

We conclude, as did the district court, that trial counsel's strategic decision to renounce evidence of his client's compromised mental state

after a less than complete investigation was not based on reasonable professional judgment. Furthermore, our confidence in the outcome of Anfinson's criminal trial is shaken by trial counsel's failure to reasonably investigate and prove his client's mental condition in furtherance of the accidental death defense. We find a reasonable probability that if a reasonable investigation had been undertaken, evidence would have been developed and presented at trial tending to establish Anfinson's conduct from the time of Jacob's birth until his death was profoundly affected by postpartum depression. We find a reasonable probability of a different outcome if trial counsel had developed and presented expert testimony diagnosing Anfinson's severe postpartum depression and connecting it with her bizarre behavior in furtherance of the accidental death defense. We are mindful of the deference owed by postconviction courts to counsel's strategic choices. Deference for such choices is not unlimited, however, and it will not be stretched to deny Anfinson a new trial under the circumstances presented here.

We reject the State's assertion evidence tending to prove Anfinson suffered from postpartum depression on the day of Jacob's death was not admissible for any purpose because she chose not to assert either an insanity or a diminished capacity defense. Although the State is correct that the law precludes a defendant from asserting those defenses if she fails to give timely notice of them consistent with Iowa Rule of Criminal Procedure 2.11(11)(*b*)(1), we are not persuaded evidence of the defendant's mental condition is inadmissible for the limited purpose advanced by Anfinson. We conclude such a limited use of evidence of Anfinson's mental state will not undercut the proper limits of mental defenses prescribed by the General Assembly and observed by this court in *McVey*. A proper limiting instruction would suffice to clarify that

Anfinson's purpose in offering such evidence is not in furtherance of a claim she was insane or incapable of forming a specific intent at the time of Jacob's death, but rather to support her theory Jacob's death was accidental. *See* Iowa R. Evid. 5.105.

**IV. Conclusion.**

Anfinson has met her burden to prove trial counsel rendered prejudicial ineffective assistance by failing to investigate and present evidence of Anfinson's depression in furtherance of the accidental death defense. As we conclude she is entitled to a new trial for this reason, we need not address the other issues raised on appeal.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except Wiggins and Baker, JJ., who take no part.