# IN THE COURT OF APPEALS OF IOWA

No. 19-1715
Filed February 16, 2022

**MICHAEL A. LAJEUNESSE,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson,
Judge.

Michael Lajeunesse appeals the denial of his application for postconviction
relief. **AFFIRMED.**

Michael A. Lajeunesse, Anamosa, self-represented appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney
General, for appellee State.

Considered by Bower, C.J., Vaitheswaran, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**DANILSON, Senior Judge.**

Michael Lajeunesse appeals the district court's denial of his application for postconviction relief (PCR) following his 2018 convictions for attempted murder and willful injury causing serious injury, in violation of Iowa Code sections 707.11 and 708.4(1) (2016). Lajeunesse contends his trial and appellate counsel were ineffective. Upon our review, we affirm.

**I.      *Background Facts and Proceedings***

In its ruling affirming Lajeunesse's convictions on direct appeal, our court set forth the following background facts:

> The record reflects the following. Lajeunesse met [Jane] Doe at an Alcoholics Anonymous meeting in July 2016. The two became fast friends and then commenced a romantic relationship. At some point after meeting, both relapsed. On October 12, Doe spent the night at Lajeunesse's apartment where they drank an unspecified quantity of beer. The next morning, the two went to Doe's home and shared one-half of a bottle of chilled rum while they talked and watched videos. In the afternoon on the same day, Lajeunesse looked through the text messages on Doe's phone and concluded Doe was having a relationship with another man. Lajeunesse raised the issue with Doe. After some discussion, she decided to go to bed and take a nap.
> Doe testified the next thing she remembered was "being punched awake." She testified Lajeunesse punched her, drug her off her bed, put her head through the bedroom wall, ripped her clothes off, drug her by the hair into the bathroom, and threw her into the tub. She testified Lajeunesse then turned on the water in the shower, grabbed her by the ears, and slammed her into the tub while "punching, slapping, and hitting." "[H]e ripped the shower curtain down and wrapped it around [her] neck. And then he'd let go and then he'd sit back on the toilet and take a break. He kept saying, 'I have to kill you now.'" She testified he used a trash-can liner to choke her "in between . . . periods of punching and hitting and strangling and begging to stop and him saying, 'No. You have to die.'" She testified she begged him to stop and asked if he was blacked out or knew what he was doing. He replied he was not blacked out and said he knew what he was doing. Doe testified he looked her in the eyes when he said this. She testified her breathing was impaired when he wrapped the shower curtain liner around her neck. Photographs of the injuries corroborated the nature and extent of

Doe's injuries. The medical examiner testified Doe's injuries were consistent with blunt force trauma and strangulation.

The assault was interrupted when one of Doe's friends from Alcoholics Anonymous came to the house to check on Doe. The friend entered the home, heard water running in the bathroom, and heard Doe call for help. The friend testified she opened the bathroom door, saw a naked man holding Doe down in the tub, and observed Doe was bleeding. The friend called 911 and ran out of the house. Lajeunesse got dressed, gathered his belongings, and exited the house as police arrived. A police officer testified he saw Lajeunesse start to run and yelled for him to stop.

Lajeunesse fell down and started crawling. The officer apprehended Lajeunesse. Lajeunesse told the officer he could not remember his name. Lajeunesse urinated on himself in route to the police station.

Lajeunesse testified at trial. He testified he drank heavily that day and ingested two Lorazepam pills to "chill out." He testified he was hurt and angry because he and Doe talked about her cheating on him. He testified she went to bed, and he borrowed her car, took the dog, and "went riding around." He drove to work, spoke to his boss, and agreed to work a Saturday shift. He testified he bought vodka. He did not drink any of the vodka while driving around. He testified he went back to Doe's house and drank a "gulp out of it, and that's all I remember." He testified he blacked out and did not remember anything else until after the assault. He remembered Doe "in the bathtub. She was bleeding . . . she was hurt pretty bad, and she was in the bathtub, and she told me I had to leave. And I said okay." He also remembered being "tackled" by an officer.

*State v. LaJeunesse*, No. 17-0507, 2018 WL 1099024, at *2 (Iowa Ct. App. Feb. 21, 2018). This court rejected Lajeunesse's challenge to the sufficiency of the evidence to support his attempted murder conviction and preserved his claims of ineffective assistance of counsel for a possible PCR proceeding.

Lajeunesse thereafter filed a pro se PCR application, raising various claims of ineffective assistance of trial and appellate counsel. He also alleged misconduct by witnesses, attorneys, and judges. In a second amended PCR application through counsel, Lajeunesse honed the two claims that he eventually presented at trial: (1) trial counsel was ineffective in failing to cross-examine Doe "about her story of being strangled" because counsel "did not use [Doe's] medical records to

impeach her" on "the nature of her injuries and the strangulation" and (2) appellate counsel was ineffective in failing to raise a "claim of insufficient evidence of a serious injury so as to support both the willful injury and the nature of injuries that would be sustained for an attempted murder charge."

Following trial, the PCR court entered an order rejecting Lajeunesse's claims and denying the application. Lajeunesse appealed.

## II. Standard of Review

"We generally review a district court's denial of an application for postconviction relief for errors at law." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021). However, our review is de novo "[w]hen the basis for relief implicates a violation of a constitutional dimension," including claims of ineffective assistance of counsel. *Id.* (alteration in original) (quoting *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018)); *accord Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

## III. Discussion

To prevail on a claim of ineffective assistance of counsel, Lajeunesse must show (1) counsel breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008). We address Lajeunesse's claims in turn.

### A. Trial Counsel

With regard to his claim of ineffective assistance of trial counsel, Lajeunesse pointed to a statement in Doe's medical records, "Pt states her significant other assaulted her. She was punched several times, mainly in the face/head. Fists

were used. *No weapons or objects used during the assault*." (Emphasis added.) According to Lajeunesse, the statement that "no objects were used" dispelled the State's theory that he strangled Doe "with a shower curtain" and "a plastic bag."

At Lajeunesse's criminal trial, Doe testified Lajeunesse "ripped the shower curtain down and he wrapped it around [her] neck," and "he took the grocery bag out [of the garbage can] and ripped it and used that to try to choke [her] two different times." She stated Lajeunesse wrapped her neck with "those things" "three" times. "He would choke [her] for a little while, and then he would let go." On cross-examination, trial counsel used various methods to impeach Doe, including questioning her about "piec[ing] together" what happened and "trying to fill in the blanks," to which Doe admitted that she did not recall "everything that happened that night." Trial counsel then elicited another admission from Doe that the attack lasted "three hours," despite her previous statement that "everything happened so fast." Trial counsel also had Doe listen to her previously-recorded statements to the detective to contradict her testimony that she did not tell the detective she had "drank enough that [she] blacked out." On this issue, the PCR court found:

> Petitioner presents nothing in his application or supporting materials, beyond accusations, to substantiate his claim of ineffective assistance of counsel. He claims that [trial counsel] should have used the inconsistency in the victim's statements concerning the use of a weapon to impeach the victim. While [trial counsel] failed to use that information to impeach the victim, he did use various other statements to impeach her. When the proceedings wrapped up, those impeached statements were insufficient to defeat the State's arguments. There is nothing presented in the record nor in the filings indicating that the use (or not) of a weapon would have been sufficient to defeat the State's claims. Even assuming [trial counsel] did attempt to impeach her using the prior inconsistent statements, the victim's trial testimony was corroborated by another witness. Petitioner cannot prove that [trial counsel]'s failure to

investigate the victim's prior inconsistent statement prejudiced him. There is no showing that Petitioner's claimed arguments would have made a difference in the trial or appellate proceedings.

On our de novo review, we find that trial counsel did not breach an essential duty for insufficient impeachment of Doe. *Cf. Mummau v. State*, No. 16-1909, 2017 WL 3525294, at *5 (Iowa Ct. App. Aug, 16, 2017) (rejecting claim of counsel's failure to impeach where "counsel confronted [a witness] with some of the inconsistencies in her statements" and made "a reasonable strategic decision" not to attempt to impeach her on "absolutely every inconsistency in her statements"). Even if counsel through oversight or error failed to impeach Doe upon Lajeunesse's point of contention, we observe that contrary to Lajeunesse's claim that Doe did not "have marks that are consistent with strangulation," photographs introduced into evidence at trial showed injuries (including red marks, lacerations, discoloration, and bruising) to her neck,[1] in addition to other areas of her face and body.[2] Moreover the jury instructions did not require the jury to determine the type of weapon used, if any. And as noted by the PCR court, Doe's testimony was corroborated by the testimony of another witness who happened stop by Doe's home to check on her in the midst of the attack. That witness described finding Doe "in the bottom of the tub. Her face looked like it was pushed down, and it look like he was like holding her down in the tub. And [her] eyes—I saw they were black and blue, and her face was bleeding from her forehead." The witness testified Doe

---

[1] The medical examiner described the injuries depicted in the photographs as follows: "[T]he injury to the side of the neck was a pattern injury, which originally I thought might be a handprint around the neck. But it certainly would also be consistent with the shower curtain [theory]." A detective also testified, "There were areas of abrasion around [Doe]'s neck."

[2] At the PCR trial, Lajeunesse acknowledged that "just looking at the photographs in this case, the facts were not on [his] side here."

told her to "[c]all the police right now" to "save [her] life." Under these circumstances, any alleged deficiency by counsel did not affect the outcome of trial and no prejudice resulted. We affirm on this issue.

### B. Appellate Counsel

Many of the facts set forth above apply to Lajeunesse's claim of ineffective assistance of appellate counsel with regard to counsel's failure to argue the evidence was insufficient to establish serious injury. As the PCR court noted, the jury was instructed "[t]he term 'serious injury' means a bodily injury which creates a substantial risk of death *or* which causes serious permanent disfigurement *or* extended loss *or* impairment of the function of any bodily part or organ." (Emphasis added.) The evidence presented at Lajeunesse's criminal trial was sufficient to prove serious injury in several of these alternatives. The medical examiner opined that instances of strangulation "can cause the person to . . . potentially die within minutes to hours after the assault"; this testimony was sufficient to establish "a bodily injury which creates a substantial risk of death."[3] And Doe testified she "suffer[s] an[] alteration[] to [her] person" caused by Lajeunesse, namely, "a three-inch bald spot in [her] hair . . . where [her] hair was ripped out" while Lajeunesse dragged her to the bathroom.[4] Doe also testified she has "a couple scars" from the assault, "one on [her] forehead, and . . . one somewhere behind [her] ear."

---

[3] Indeed, on direct appeal, this court observed, "The medical examiner testified Doe's injuries were consistent with strangulation," and, "[w]e have previously held strangulation creates a substantial risk of death." *LaJeunesse*, 2018 WL 1099024, at *3 (quoting *State v. Sisco*, No. 16-1170, 2017 WL 3505294, at *3 (Iowa Ct. App. Aug. 16, 2017)).

[4] Doe "walk[ed] in front of the jury and h[e]ld [her] hair up so they [could] see [the bald spot]."

This testimony and graphic evidence was sufficient to establish "serious permanent disfigurement." On this issue, the PCR court found:

> Petitioner must show that [appellate counsel]'s decision not to press the sufficiency of the evidence issue goes above and beyond a mere strategic decision made by his appellate counsel. Here, [appellate counsel] testified that challenging the sufficiency of the evidence of serious injury was meritless. The evidence established that the victim's face was still physically scarred from the incident in a way easily observable by the jury. [Appellate counsel] is under no duty to raise an issue she declares is meritless. As Petitioner cannot prove that [appellate counsel] failed to exercise due diligence resulting in prejudice to Petitioner, this claim fails.

We agree.

Having addressed the claims properly before us,[5] we affirm the denial of Lajeunesse's PCR application. We also deny both motions filed by Lajeunesse in these proceedings.[6]

**AFFIRMED.**

---

[5] Lajeunesse raises a myriad of claims that were not presented before the PCR court. Although Lajeunesse filed a motion for expanded findings, he filed his notice of appeal prior to any district court ruling on his motion. "[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Accordingly, those claims are not preserved for our review. *See Goode v. State*, 920 N.W.2d 520, 526 (Iowa 2018) (noting "[a]s a general rule, we do not address issues presented on appeal for the first time"); *State v. Phillips*, No. 20-0002, 2021 WL 3076438, at *2 (Iowa Ct. App. July 21, 2021). Accordingly, we have only addressed the two issues considered by the PCR court.

[6] While this appeal was pending before this court, Lajeunesse filed two pro se motions: in a motion filed January 14, 2022, Lajeunesse requested dismissal of his charges with prejudice, and in a motion filed January 21, 2022, Lajeunesse requested to be immediately released from prison and referrals to the attorney disciplinary board for various attorneys on his case. We note that Iowa Code section 822.3A (Supp. 2019) (precluding consideration of pro se motions) does not apply to Lajeunesse's motions because he is not "currently represented by counsel." Upon our review of the motions, we choose to consider both motions along with this appeal, and we find no merit in either motion. The applicant may request information in respect to attorney discipline from the attorney disciplinary board.