# IN THE COURT OF APPEALS OF IOWA

No. 24-0210
Filed December 18, 2024

**LARON DPREE HAMPTON,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Mills County, Kathleen A. Kilnoski, Judge.

　　Laron Hampton appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

　　Jessica Donels of Parrish, Kruidenier, L.L.P., Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

　　Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Laron Hampton appeals the district court's denial of his application for postconviction relief following his 2018 convictions for three counts of second-degree sexual abuse. Hampton claims his trial counsel was ineffective in "failing to preserve error related to C.S.'s medical records" and his appellate counsel was ineffective "for failing to raise this issue on direct appeal." Upon our review, we affirm.

## I. Background Facts and Proceedings

In the opinion affirming Hampton's convictions on direct appeal, our court stated Hampton "was convicted of three counts of second-degree sexual abuse for multiple assaults of nine-year-old C.S. At the time of the abuse, Hampton was dating C.S.'s mother. Both Hampton and C.S. tested positive for chlamydia following the abuse. C.S. was subsequently placed in foster care." *State v. Hampton*, No. 18-1522, 2020 WL 2968342, at *1 (Iowa Ct. App. June 3, 2020). This court rejected Hampton's claims of ineffective assistance of counsel relating to counsel's failure to strike a juror and object to a victim impact statement. *Id.* at *2–6. Our court vacated the restitution order and remanded with instructions to the sentencing court to recalculate restitution in accordance with *State v. Albright*, 925 N.W.2d 144, 162 (Iowa 2019). *Id.* at *6–7.

Hampton filed a pro se application for postconviction relief (PCR), claiming his trial counsel was ineffective for failing to object when the State "refuse[d] to provide" medical records to the defense. Hampton later filed an amended PCR application through counsel, clarifying his claim to allege that trial counsel was ineffective "for failing to preserve the trial court error of overruling his request to

offer evidence 'that [C.S.] engaged in other sexual behavior' under the exceptions in Iowa Rule of Evidence 5.412(b)(1)(A) and (C)" and appellate counsel was ineffective for failing to raise the claim on direct appeal. The district court denied the application. Hampton appeals.

## II.      Standard of Review

"We ordinarily review PCR rulings for correction of errors at law." *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022). "However, when the applicant asserts claims of a constitutional nature, our review is de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). Accordingly, we review Hampton's claims on appeal de novo. *See id.*

## III.     Analysis

 On appeal, Hampton frames his arguments as follows: his trial counsel was ineffective in "failing to preserve error related to C.S.'s medical records" and his appellate counsel was ineffective "for failing to raise this issue on direct appeal." The facts below are relevant to Hampton's claims on appeal.

As noted above, the State presented evidence that both Hampton and C.S. tested positive for chlamydia after C.S. reported Hampton abused her. Because there was no "physical evidence" to support a sexual assault of C.S.,[1] the evidence that both C.S. and Hampton had chlamydia was important for the State's case. Hampton's trial counsel, William McGinn, testified his defense strategy included investigation into whether Hampton and C.S. could have contracted chlamydia "from a third party," such as C.S.'s mother, or whether the State could "prove

---

[1] Hampton's trial counsel acknowledged "there was a delay between the alleged assault and the time that [C.S.] reported it."

whether or not one gave it to the other." Meanwhile, McGinn "bec[a]me aware of information concerning another allegation of sexual abuse upon [C.S.]" and realized certain medical reports "were not turned over" to the defense "due to the rape shield law"—Iowa Rule of Evidence 5.412.[2] That rule provides:

> a. *Prohibited uses.* The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual abuse:
>> (1) Reputation or opinion evidence offered to prove that a victim engaged in other sexual behavior.
>> (2) Evidence of a victim's other sexual behavior other than reputation or opinion evidence.
> b. *Exceptions.*
>> (1) *Criminal cases.* The court may admit the following evidence in a criminal case:
>>> (A) Evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence.
>>> (B) Evidence of specific instances of a victim's sexual behavior with respect to the person accused of sexual abuse, if the defendant offers it to prove consent.
>>> (C) Evidence whose exclusion would violate the defendant's constitutional rights.

Iowa R. Evid. 5.412.

McGinn filed a motion, pursuant to Iowa Rule of Evidence 5.412, "to try to get those" records. The motion stated, in relevant part:

> 1. Defendant is charged with three counts of Sexual Abuse in the 2nd degree[.]
> 2. Through discovery the victim alleged abuse by another individual, as a result, Defendant should be allowed to cross examine the victim on the topic of another perpetrator.
> 3. An order should issue to offer evidence of injury from another source under implied Rule 5.412.

McGinn explained his strategy as follows:

---

[2] Iowa Rule of Evidence 5.412 was amended effective January 1, 2023. We use the prior version as the rule in effect at the time of trial.

My understanding was that this victim was the subject of another sexual abuse incident, and my question was—my question was could she have gotten chlamydia from that incident and had it the entire time and then maybe given it to her mother; her mother gave it to my client? That's a possibility.

. . . . As far as the other sexual behavior—see, the victim was a minor, so that makes it—that added to it as well. But that's basically what I was looking for is evidence to support the fact that maybe the chlamydia may have come from another source.

. . . .

. . . Because it didn't do any good to argue that she gave him chlamydia because she's a minor and he's still guilty, but if there's a possibility that either the mother got it from her and gave it to—the mother got it from her and gave it to my client or that the mother had it, gave it to her and also gave it to my client, that's what we were looking at.

Were there other explanations to why both my client and the victim had chlamydia or tested positive for chlamydia?

A hearing on the motion took place in November 2017. At the outset, the prosecutor set forth the following "background information" surrounding the requested medical reports:

This particular victim was sexually assaulted a couple years back. She went to Project Harmony, and I think Mr. McGinn made a request—and I don't know that the motion has ever been ruled on—to look at those records and to use those in trial. Now, we assert that this is part of rape shield and he shouldn't be able to use those records in Court unless they potentially show something exculpatory and that would need an in-camera review. Now, I am willing to give them to him just for his research purposes so that we can have a proper hearing on whether those can be used, whether or not those issues can be discussed. The State believes those aren't going to be things that are able to be discussed or brought up in Court, so that is really what the delay was on our part.

I just realized that Mr. McGinn's defense in this case was that essentially the child got Chlamydia from the sexual assault years ago. We have medical records that show that that was not the case and are willing to provide those at this point.

The court responded, "All the records, all the evidence should be gathered, all the reports that the State has in their possession concerning these allegations, the defense should have a chance to review them." The court granted Hampton's

motion to continue trial to allow the court additional time to conduct an in camera review of the reports and determine whether the evidence should be admissible.

After an in camera review, the court overruled Hampton's motion:

Defendant seeks to cross examine C.S. during her trial testimony on the topic of another perpetrator and on evidence of injury from another source.

. . . .

Generally, questioning about a victim's past sexual contacts, even non-volitional contacts, is a violation of the Iowa's Rape Shield rule. . . . Iowa's Rape-Shield law was enacted to protect the privacy of victims, encourage reporting, and prevent time-consuming and distracting inquiry into collateral matters.

Defendant seeks to question C.S. on the topic of another perpetrator. Such evidence, as characterized in the motion, does not fall within an exception to Rule 5.412(b). The prior reports regarding C.S. are not discoverable by the Defendant for this purpose.

Defendant seeks to cross examine C.S. during her trial testimony on the topic of evidence of injury from another source. Consent is not a defense if the alleged victim is a minor. No semen was discovered, so another source of semen is not an issue. No injury was discovered in the 2015 physical examination of C.S. C.S. was tested for STDs in 2015, and those tests were negative. Defendant has not crossed the threshold to establish admissibility of evidence of any prior abuse of C.S. as an exception to Rule 5.412. Defendant has not shown that the evidence is relevant or material or that the evidence [he] seeks comes within any exception to Rule 5.412. Defendant's motion for production of prior treatment records pertaining to C.S. is overruled.

IT IS THEREFORE ORDERED that Defendant's motion pursuant to Rule 5.412 is overruled.

IT IS FURTHER ORDERED that after in camera review of the prior treatment records of C.S. the court determines that those records do not contain evidence that is relevant to any claim or defense, and its admissibility into evidence would violate Rule 5.412 with regard to C.S.

(Internal citation omitted.)

The case proceeded to trial, and the jury found Hampton guilty as charged. The challenged medical records were not made part of the record in Hampton's underlying criminal case.

On direct appeal, appellate counsel declined to pursue a claim relating to the admissibility of the challenged medical records because the record did not contain a factual basis to support such a claim. As appellate counsel explained, "[T]here's nothing [in the record] suggesting what [McGinn] didn't get in the medical records." According to appellate counsel:

[A]t that hearing, the hearing in November, I believe it was November of 20—yeah, 2017, the county attorney stated that she had medical records proving that the complaining witness did not get chlamydia from the first assault. The first assault happened two years earlier. . . .
. . . .
. . . [T]here was no—there was no proof of injury of the chlamydia in the original assault. . . . I don't know what medical records the prosecution had.
. . . .
And [McGinn] didn't . . . put in the factual basis for [a potential claim], which would have been the deposition of the complaining witness, and he provided no basis for an appeal.
It's impossible to show prejudice with the current record. It's also impossible to show relevance for the testimony asking—eliciting testimony from the complaining witness regarding the previous sexual assault.
. . . .
. . . Maybe he was told or he was assuming that the complaining witness contracted chlamydia on the previous occasion. She may have.
The prosecution's record may have shown that a post—a post-sex kit examination or something of that nature showed that she no longer had it and then she again contracted it. We don't know.

Hampton moved to reopen the PCR record, claiming "[t]he medical records that were reviewed in camera by the judge who tried this case are essential in determining whether the post-conviction issues have merit." Hampton asked the court "to allow the medical record to be part of the record in this case." The State did not resist. Following a hearing, the court granted the motion and considered

the additional evidence in evaluating Hampton's PCR claims. Ultimately, the court

denied Hampton's application, finding in relevant part:

> Hampton simply cannot show that the trial court's ruling regarding the motion was faulty or that his trial counsel could have, or should have, done anything differently regarding C.S.'s prior history.
>
> The disputed medical records, PCR Exhibit 7, show that C.S. was interviewed at Project Harmony in June 2015 regarding allegations of sexual abuse. The report gathered history from C.S.'s mother, child protective investigators, and law enforcement. It stated that C.S.'s mother had taken C.S. to be tested for possible STDs before bringing the child to Project Harmony. During her forensic interview, C.S. disclosed "penile-vaginal penetration, penile-oral penetration, and penile-anal penetration" by a babysitter. The assessment concluded that C.S. had a "[n]ormal ano-genital examination. A normal ano-genital examination neither confirms nor excludes the possibility of sexual abuse." No vaginal or anal discharges, tears, lacerations, or other concerns were noted. Specimens were collected to test for gonorrhea and chlamydia, with results pending at the time of discharge.
>
> While the results of any test in 2015 for sexually transmitted disease are not set out in PCR Exhibit 7, the prosecutor during the rape shield hearing stated [the State has evidence showing the child did not contract chlamydia from the earlier assault]. There was no evidence in the medical record reviewed by the trial judge *in camera* that C.S. tested positive for chlamydia in 2015. *There was nothing to refute the prosecutor's statement at the pretrial hearing that C.S. did not have chlamydia before her abuse by Hampton.*
>
> More importantly, Hampton has not demonstrated that the trial court erred by not allowing him to present evidence regarding C.S.'s previous alleged abuse. Without any evidence that C.S. had chlamydia before she was assaulted by Hampton, her alleged sexual abuse in 2015 cannot be shown to be relevant to any defense Hampton could have to the 2017 allegations. The trial court's well-grounded ruling cited applicable case law and cannot be said to be flawed in any way by the undersigned. *Hampton has not shown that if his trial counsel had had access to the 2015 report, the trial would have had a different result.*
>
> Hampton points to his criminal appellate counsel's deposition testimony to support his claim that trial counsel was ineffective. Appellate counsel faulted trial counsel for not including C.S.'s deposition in the trial record associated with the Rule 5.412 motion. Without the deposition or some offer of proof that showed that C.S. had contracted chlamydia in the 2015 assault, appellate counsel opined that he had no way to appeal regarding the rape shield ruling,

and no way to establish that the prior sexual contact was relevant. *The problem with Hampton's PCR argument is that he has yet to provide any evidence that C.S. did contract chlamydia in 2015.* Appellate counsel's deposition testimony was clear that without such evidence, the Rule 5.412 motion was a non-starter. An alleged sexual assault of a child two years earlier is exactly the type of evidence the rule is intended to protect. Appellate counsel cannot be faulted for failing to raise an issue that lacked merit.

Finally, Hampton has not demonstrated that the outcome of the trial would have been different if he had been provided the 2015 medical report from Project Harmony. He has not demonstrated that his trial counsel's performance regarding the Rule 5.412 motion was deficient or that the trial court ruling on the motion was flawed. His criminal appellate counsel cannot be shown to have been ineffective for failing to raise these meritless issues on appeal. The testimony of C.S. was compelling and detailed. While evidence of the chlamydia infections was strongly corroborative of her testimony, it was not the only corroborating evidence at trial. Hampton has failed to show that his trial or appellate counsel was ineffective, and he has failed to show that he was prejudiced.

**IT IS THEREFORE ORDERED** that Laron Hampton's application for postconviction relief is denied.

(Internal citations omitted and emphasis added.)

To establish ineffective assistance of counsel, Hampton must prove both (1) counsel's performance fell below objectively reasonable standards and (2) if counsel had acted differently, there would have been a reasonable probability of a different outcome at trial. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking." *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. As McGinn reflected, "I don't think there's anything I could argue now

that I couldn't have—that I didn't argue at that time." Upon our review of this record, which includes the requested medical records from the Project Harmony interview after the disclosure of sexual abuse by Hampton, we find no evidence to support Hampton's claim C.S. had chlamydia prior to her 2017 assault by Hampton.[3] We cannot say McGinn breached an essential duty by failing to preserve error on a claim for which there is no support in the criminal or PCR record.[4] And appellate counsel was not required to "raise an issue that lacks merit." *State v. Doolin*, 942 N.W.2d 500, 507 (Iowa 2020) (quoting *State v. Ortiz*, 905 N.W.2d 174, 184 (Iowa 2017)).

Because Hampton failed to establish the ineffective assistance of either his trial or appellate counsel, we affirm the denial of his PCR application.

**AFFIRMED.**

---

[3] During defense counsel's cross-examination of a State witness in the criminal trial, the State objected to cross-examination of the witness concerning a 2015 assault not related to the 2017 assault, and further requested that the State be permitted to admit a negative chlamydia test following the 2015 assault if the State's objection was overruled. The trial court sustained the State's objection, and the medical record related to the negative test following the 2015 assault is not contained in the our record.

[4] "We need not reach the prejudice prong as counsel performed competently." *State v. Johnson*, 604 N.W.2d 669, 673 (Iowa Ct. App. 1999).