# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0417
Filed April 15, 2026

————————————

**Michael Paul Eaton,**
Applicant–Appellant,

v.

**State of Iowa,**
Respondent–Appellee.

————————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Kellyann M. Lekar, Judge.

————————————

**AFFIRMED**

————————————

Alexander Smith of Parrish Kruidenier, L.L.P., Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney
General, attorneys for appellee.

————————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

Michael Eaton appeals the district court's denial of his application for postconviction relief (PCR) following his 2021 convictions for escape as a habitual offender, driving while barred, and interference with official acts resulting in bodily injury. Eaton raises claims of ineffective assistance of counsel. Upon our review, we affirm.

## I.    Background Facts and Proceedings

In its opinion affirming Eaton's convictions on direct appeal, this court set forth the following facts:

> Sheriff Deputy Chad Chase was patrolling in Waterloo when he saw a driver in a white Charger cover his face while Chase drove by. He followed and determined the vehicle belonged to a person whose son, Eaton, had an active warrant for his arrest because of a probation violation on a felony conviction. He confirmed the photograph of Eaton matched the person he saw trying to hide his face in the Charger. Eaton's Charger was stopped in the small parking lot of a collectibles shop and, after circling a few times, Chase pulled in after him, blocking the entrance with his patrol vehicle.

> Chase testified he exited his vehicle as Eaton was walking toward the shop. He said, "Michael, stop," and Eaton changed direction and walked toward the back of the building. Chase pulled out his taser and followed Eaton behind the building. Eaton told Chase that he was "not Michael." Chase said he would shoot if he did not stop. At the point of his taser, Chase walked Eaton backed to the Charger and had him sit in the front seat with the door open, which he "figured . . . was the safest spot at that point." Eaton's girlfriend, Heather Glaspie, was in the passenger seat of the Charger, and Chase asked for her identification. Standing so the car door remained open, Chase testified Eaton "was detained at that point. He was not going to leave." While Chase intended to place Eaton in handcuffs, he wanted to wait for another officer to arrive to do so safely.

> Radioing with dispatch, Chase took a few steps toward the back of the car to get the license plate number. In that short time, Eaton closed and

2

locked the driver door. The window was about half down, and Chase began "yelling through the window, telling him to unlock the door, open the door." But Eaton put the Charger in reverse and backed out of his parking spot while Chase yelled at him to stop. Chase stood right outside the driver's door, pointed his taser at Eaton, threatened to shoot him, and yelled at him to stop and turn the car off. When Eaton did not comply, Chase shot him with the taser, which caused Eaton to "stomp on the gas," reversing and crashing into Chase's patrol vehicle. The taser stopped working after a few seconds. Eaton then put the car in drive and pulled forward into the parking lot but had no space to exit. Chase followed and shot the taser again but missed this time. Eaton quickly reversed, driving over the lawn to get out of the parking lot. Chase followed, this time pointing his gun. Glaspie was screaming from the passenger seat "don't shoot." Chase had to jump out of the way as Eaton then drove off. Video of most of the event was captured on Chase's dashboard camera, but no audio of the incident was recorded. The next day, officers located the Charger with a broken taillight in a garage and Eaton hiding in Glaspie's apartment under a pile of clothing. Taser wires were found on the floor of the Charger.

At trial, Glaspie testified both she and Eaton knew he was wanted on the warrant. She was waiting in the Charger outside the shop and saw Chase circling the parking lot. She called Eaton, who was inside the shop, and told him about it, which is when he came out. When asked whether she believed Eaton was "free to leave that area," Glaspie testified, "He was obviously being under—put under arrest for an officer to stop, and he had a warrant . . . ." Another witness from inside the collectibles shop testified Eaton received a phone call from someone labeled "Heather" who said, "cops have gone by a couple times, that [Eaton] needed to get out of there."

State v. Eaton, No. 21-1405, 2023 WL 152654, at *1–2 (Iowa Ct. App. Jan. 11, 2023). The court rejected Eaton's challenges to the jury instruction on appeal and the sufficiency of the evidence supporting his escape conviction. *Id.* at *2–5.

Eaton filed a PCR application several months later, raising claims of ineffective assistance of counsel. His application was amended later by

counsel. Following a hearing, the district court denied the application. Eaton now appeals.

## II.    Standard of Review

"We review de novo PCR claims of ineffective assistance of counsel." *Trane v. State*, 16 N.W.3d 683, 692 (Iowa 2025). "On de novo review, 'we give weight to the lower court's findings concerning witness credibility.' But we are not bound by the lower court's determination." *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021) (citation omitted).

## III.   Analysis

Eaton claims his counsel was ineffective by failing to challenge the escape marshalling instruction "based on the correct definition of 'arrest' under Iowa Code § 804.14 [(2020)]" and by failing "to ask for a pretrial determination of the jury instructions, undermining the knowing, intelligent, and voluntary nature of Eaton's decision whether to plead guilty." To prevail on either claim, Eaton must prove (1) counsel's performance fell below objectively reasonable standards and (2) if counsel had acted differently, there would have been a reasonable probability of a different outcome at trial. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

Turning to Eaton's first claim, he has the burden to show both that the instruction provided was "in error" and that the escape "did not occur as a matter of law." *See Briggs v. State*, No. 0-147, 2000 WL 700311, at *4 (Iowa Ct. App May 31, 2000).

Our court has already determined "the arrest instruction conveyed a clear understanding of the arrest issue." *Eaton*, 2023 WL 152654, at *2–4. Specifically, on direct appeal, Eaton challenged the escape instruction based on the definition of arrest, and this court rejected his claim. *See id.* at *4

4

(finding no error in the court giving the instruction to the jury). Accordingly, Eaton's claim fails on the first prong. *Briggs*, 2000 WL 700311, at *4; *see also State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) ("[C]ounsel has no duty to raise an issue that has no merit."); *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008) ("We may affirm the district court's rejection of an ineffective-assistance-of-counsel claim if either element is lacking.").

Turning to Eaton's second claim, at the PCR hearing, Eaton agreed that he rejected a plea offer before trial. But Eaton testified that his trial counsel "should have sought some relief on [how the definition of the jury instructions should work] before trial so that [he] understood what was going to happen at trial." Trial counsel testified that she "spent quite a bit of time talking about the strategy in the case" with Eaton. Trial counsel explained that they "agreed" their defense strategy would focus on arguing that Eaton "wasn't yet in custody to have escaped from it."

Trial counsel explained why she did not attempt to obtain a pretrial ruling "on the definition" of "the parameters of custody and arrest":

> [T]here's a couple of reasons. I can't think of—I probably couldn't count on more than five fingers the number of times I've filed for pretrial determinations or adjudication of law points, but normally my strategy would not be to highlight the issues to the State of what we're going to be arguing at trial, and that would have done that, and I guess to have the issue foreclosed upon before trial could have changed every count.
>
> . . . .
>
> I think it would have put [the prosecutor] on notice of what our issues were going to be, and he might have been more prepared to address them at trial.

Trial counsel also recalled that Eaton "did not want the plea offer of the 30 years with the mandatory six because he was already getting probably

5

15 on the other case he had pending," and "our entire goal" "was beat the felonies." She further testified that Eaton "was pretty adamant that we were going to take this one to trial," so she did not believe a pretrial ruling "would change anything." Trial counsel reflected that even "[k]nowing how trial played out," she did not believe she would have done anything differently than she did at the time. We note that Eaton was found not guilty on several counts.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. We review counsel's strategy and tactical decisions to determine whether they were "reasonable under the circumstances." *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001).

Here, we concur with the PCR court's determination that trial counsel "made a reasonable strategic decision not to pursue a pretrial determination so that the defense did not alert the State to intended trial strategy and also to allow the defense to remain nimble at the time of trial to respon[d] to the State's evidence." Eaton's claim on this basis fails.

Because Eaton failed to establish ineffective assistance of counsel, we affirm the denial of his PCR application.

**AFFIRMED.**